## Case *v.* Bumstead and Others.

Vendor's Lien.—A sold to B certain real estate, by a contract in writing, for the sum of $2,500. By the terms of the contract, A was to execute a deed of conveyance, on the payment of $1,000, at a day fixed, and was to receive the notes of B for the residue of the purchase money, payable at one and two years from date. It was further stipulated that on the execution of the deed, B should have possession of the premises, "free from rent or charge." The deed was executed and delivered at the time stipulated. Afterward, A caused the execution of the contract of sale to be proved by the subscribing witness, and the contract to be recorded in the recorder's office. Suit by A to enforce a vendor's lien against the vendees of B, who had purchased after the recording of the contract of sale, but without actual notice of the equitable lien.

*Held*, that section 35 of the "Act concerning real estate and the alienation thereof," 1 G. & H. 266, authorizes the recording of executory contracts for the sale of lands, and the record of such an instrument is constructive notice of its contents to all subsequent purchasers or mortgagees.

*Held*, also, that while the record of the deed from A to B was *prima facie* evidence that the purchase money had been paid, the record of the original contract of sale was notice to all subsequent purchasers that a portion of the purchase money remained unpaid, and constituted an equitable lien upon the land.

*Held,* also, that the stipulation in the contract, that B was to have possession on the execution of the deed, "free from rent or *charge,*" was not a waiver or release of the vendor's lien.

APPEAL from the *Pike* Circuit Court.

ELLIOTT, C. J.—Complaint by *Case,* the appellant, against the appellees, to enforce a vendor's lien on real estate.

The facts of the case, as alleged in the complaint, are substantially these: *James Evans,* being seized in fee of certain real estate, situate in *Pike* county, on the 3d of *November,* 1855, bargained and sold the same to *N. R. &amp; E. S. Alford,* by an agreement in writing, signed by the parties, as follows:

"Article of agreement made and entered into the 3d day of *November,* 1855, between *James Evans,* of *Pike* county, *Indiana,* of the one part, and *Nathan R. Alford* and *Elijah S. Alford,* of the same place, of the other part, witnesseth: that the said *James Evans* has this day sold to the said *Elijah S. Alford* and *Nathaniel Alford,* the equal, undivided half of the following described tract of land, lying and being in said county of *Pike,*" (describing it,) "containing one hundred and fourteen and one-half acres. The said *Alfords* agree to pay to said *Evans,* as consideration money therefor, one thousand dollars on or before the 1st day of *April,* 1856, and, upon making such payment, to execute to said *Evans* their two notes of hand, one payable on the 25th day of *December,* 1856, for one thousand dollars, and one for five hundred dollars, payable *December* 25th, 1857; said notes to bear interest from date. Now the said *Evans,* on his part, agrees, upon receipt of the first payment as aforesaid, and upon the execution of the notes aforesaid, to make and execute to the said *Alfords* a good and sufficient deed in fee simple for said tract of land, and also to give to them possession of the premises, including houses, free from rent or charge.

"In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

[Signed,]          JAMES his ⋈ mark. EVANS.     [SEAL.]

                N. R. & E. S. ALFORD. [SEAL.]"

"*Attest:* JOHN MCINTIRE."

On the 24th of *March*, 1856, the *Alfords* paid to *Evans*, on the contract, $1,000, and executed to him their two promissory notes, one for the sum of $1,000, payable on the 25th of *December*, 1856, and the other for the sum of $500, payable on the 25th of *December* 1857. They describe the land, and show that they were given in part consideration therefor. *Evans*, on the same day, executed and delivered to the *Alfords* a deed of conveyance in fee for the land, as required by the terms of the written contract.

On the 9th of *April*, 1856, *Evans* procured the execution of the written agreement to be proved before the recorder of *Pike* county, by *McIntire*, the subscribing witness, a certificate of which proof was duly indorsed on the agreement by the recorder, and the agreement and certificate were then recorded in the recorder's office of said county.

On the 25th of *April*, 1856, *Evans* sold, and transferred by indorsement in writing, both the promissory notes executed to him by the *Alfords*, to *Case*, the plaintiff.

*N. R. & E. S. Alford*, afterward laid off and platted the lands into town lots, named the town *Alford*, and had said plat duly acknowledged, and recorded in the recorder's office of the county of *Pike*. The defendant, *Rhoda Bumstead*, afterward became the purchaser, and is now the owner, of a large number of said lots, particularly described in the complaint.

The complaint also avers that the notes remain due and unpaid, and that *N. R. & E. S. Alford* long since failed in business and removed from this state, and that they, nor

either of them, have now, nor within the last five years have had, any property in this state subject to execution. The complaint prays that the amount due on said notes may be declared a lien on said lots, now owned by said *Rhoda Bumstead*, and, unless the same be paid, that a sale of said lots be decreed for the payment thereof, &c.

Publication was made as to the defendants, *Nathan R.* and *Elijah S. Alford*, and they were defaulted. *Rhoda Bumstead* appeared and demurred to the complaint. The court sustained the demurrer, and, thereupon, rendered final judgment for the defendants.

The only question urged for the reversal of the judgment of the Circuit Court arises upon the ruling of that court in sustaining the demurrer to the complaint.

It is not averred in the complaint that *Rhoda Bumstead*, at the time she purchased the lots and received a title to them, had *actual* notice of the existence of the notes to *Evans*, and that they were given for a part of the purchase money of the land by *N. R. & E. S. Alford*, but it is averred that she had constructive notice thereof, by the recording of the article of agreement between the parties, in reference to the purchase.

Section 35 of the "Act concerning real estate and the alienation thereof," 1 G. & H. 266, provides that "every executory contract for the sale or purchase of lands, when proved or acknowledged in the manner prescribed in this act for the proof or acknowledgment of conveyances, may be recorded in the county in which the lands to which such contract shall relate may be situate; and when so proved or acknowledged, and the record thereof when recorded, and the transcript of such record when duly certified, may be read in evidence in the same manner, and with the like effect, as in the case of a conveyance."

This provision of the statute authorized the contract between *Evans* and the *Alfords* to be recorded, and the recording of an instrument, authorized by law to be recorded, operates, in judgment of law, as constructive

notice to all subsequent purchasers or mortgagees of the contents of such instrument. *Lasselle* v. *Barnett*, 1 Blackf. 151; *Reed* v. *Coale*, 4 Ind. 283. This contract having been duly proved and recorded before *Rhoda Bumstead* purchased the lots, she must, therefore, be presumed to have purchased with notice of its contents.

Assuming, then, that she had notice of the existence and contents of the contract, the question is presented, are the facts stated in the contract sufficient to charge her with notice, after the execution of the deed by *Evans* to the *Alfords*, that a part of the purchase money still remained unpaid? It was evidently the object of *Evans*, in procuring the contract to be proved and recorded, to assert his equitable lien on the land for the unpaid purchase money, and to give notice thereof to all who might become interested. Its covenants, in other respects, had been fully performed before it was recorded, by both parties; and, except as a means of giving such notice, its recording would have been a useless expense. The facts shown by the contract are, that the whole consideration for the land was $2,500; that of this sum the *Alfords* were to pay $1,000 on the 1st of *April*, 1856, at which time *Evans* was to execute to them a deed for the land, and, at the same time, they were to execute to *Evans* their promissory notes, one for $1,000, payable on the 25th of *December*, 1856, and the other for $500, payable *December* 25th, 1857.

By the record, then, *Mrs. Bumstead* was notified that the *Alfords* were to receive a conveyance for the land long before they were to pay $1,500 of the purchase money, and that, at the same time of the execution of the deed to them, they were to execute to *Evans* their two promissory notes for that $1,500. While the record of the deed afforded *prima facie* evidence that the purchase money was fully paid at its execution, the record of the original contract gave notice that, by its terms, the deed was to be made and delivered, leaving $1,500 of the purchase money to be paid at a distant future time. The reasonable inference to

be drawn from these facts would seem to be that the deed was executed under and according to the original contract, and that a part of the purchase money, therefore, was not paid at or before the execution of the deed. And these facts, it seems to us, should be deemed sufficient to have put *Mrs. Bumstead* on her guard, and to require that she should have made the proper inquiry, by which she could have readily ascertained that the notes for the $1,500 were still unpaid and outstanding, and constituted an equitable lien on the land for their payment.

No brief has been filed in the case by the appellee's counsel, and hence we are not directly advised of the grounds assumed in support of the demurrer in the court below; but we are informed by the appellant's brief that it was insisted, in the Circuit Court, that the lien that might otherwise have attached, was discharged by a stipulation in the original executory contract between the parties. It was therein stipulated that on the receipt of $1,000 of the purchase money, and upon the execution by the *Alfords* of the notes for the remaining $1,500, *Evans* should "make and execute to the said *Alfords* a good and sufficient deed in fee simple for said tract of land, and also give to them possession of the premises, including houses, free from *rent or charge.*" And it was urged in the Circuit Court, as we are informed by the appellant's brief, that as the vendor's lien for the unpaid purchase money is a *charge* upon the land, the stipulation in the agreement in this case, that the *Alfords* were to have the possession of the lands and houses, "free from rent or *charge*," was a waiver of any lien for the purchase money, and discharged the land therefrom.

We do not think that such a conclusion can be legitimately drawn from that provision or expression in the contract, when fairly construed in connection with its other provisions. The deed was to be made by *Evans*, and possession given, when only two-fifths of the purchase money were paid. Yet it was provided that the *Alfords*

were to have the possession of the land and houses, "free from rent or charge;" that is, free from rent or charge for, or on account of, such possession or use of the property. The term "*charge*" is used in immediate connection with "rent," and if not intended to mean the same thing, at least refers to the same subject matter, viz : the possession, use and occupancy of the land, and the houses thereon, and does not, as we think, have any reference to the equitable lien or charge upon the land, given by the law, for the unpaid purchase money.

No other security was given or provided for, and we see nothing in the contract indicating any intention on the part of *Evans* to waive the lien. We think the Circuit Court erred in sustaining the demurrer to the complaint.

The judgment is reversed, with costs.

*W. E. Niblack* and *W. H. De Wolf*, for appellant.

*J. G. Jones*, for appellees.