WILSON *v.* HUNTER and Another.

VENDOR AND PURCHASER.—*Incumbrances.*—*Notice.*—Notice to the purchaser of real estate at the time of purchase that his vendor owes any part of the purchase money, is sufficient to put such purchaser upon inquiry as to the amount unpaid and the condition thereof as to security.

SAME.—A. sold and conveyed certain real estate to B., and took his notes for the purchase money, and a mortgage on the land to secure the same. Before the mortgage was recorded, but after the time limited therefor, B., still owing the entire purchase money, sold and conveyed the land to C., who at the time of his purchase had notice that there was due from B. to A. unpaid purchase money to a certain amount, being only a part of the actual amount, but had no notice of the mortgage.

*Held*, that C. could not be considered a purchaser in good faith without notice of the mortgage.

*Query.*—Where a purchaser, who has taken a conveyance and paid part of the purchase money in good faith, receives actual notice, before all the purchase money has been paid, of such a prior outstanding unrecorded mortgage, does the land thereby become chargeable in his hands for the whole amount due on the mortgage? And is there a distinction in this respect between a prior mortgage or other mere money incumbrance, and a prior legal or equitable title to the estate itself?

*Query.*—Does the vendor of real estate, by taking a mortgage thereon to secure unpaid purchase money, waive his implied equitable lien?

APPEAL from the Cass Circuit Court.

ELLIOTT, J.—This was a suit by Wilson, the appellant, against Thomas and Washington Hunter for the foreclosure of two mortgages, and to enforce a vendor's lien on real estate for the purchase money.

The facts alleged in the complaint are, in substance, as follows: On the 14th of September, 1863, Wilson sold and conveyed to Thomas Hunter, one of the defendants, a tract of land containing eighty acres, in Cass county, Indiana, for the sum of one thousand four hundred dollars, for which Hunter executed to him, of the same date, two promissory notes for seven hundred dollars each, one due December 25th, 1863, and the other December 25th, 1864, with interest from December 25th, 1863. Hunter at the same time executed to Wilson a mortgage on the same land, to secure

the payment of the notes at maturity.    The mortgage was executed in Montgomery county, Ohio, was duly acknowledged before a justice of the peace of that county, and the certificate of acknowledgment properly authenticated to admit it to record under the laws of this State, but it was not recorded in the recorder's office of Cass county until the 20th of March, 1865.

On the 11th of March, 1864, Thomas Hunter executed to one Shultz a mortgage on said land, to secure the payment of a promissory note given by him to Shultz, on the same day, for three hundred dollars, for money loaned, payable one year after the date thereof, with interest from date, waiving the appraisement laws.    The mortgage was duly acknowledged, and recorded in the recorder's office of Cass county on the 15th of March, 1864, Shultz at the time of taking the same having no notice of the prior mortgage and lien of Wilson.    On the 6th of April, 1864, Thomas Hunter sold and conveyed the land to his brother, Washington Hunter.    The deed contains a statement that Washington was to pay the mortgage debt of Shultz.

Wilson, to protect his mortgage, subsequently purchased the note and mortgage of Shultz.

The complaint seeks a foreclosure of both mortgages, and alleges, that Washington Hunter purchased the land with full notice of the mortgage to Wilson, and also that he has not paid the purchase money to Thomas Hunter.

It is further averred in the complaint that Washington Hunter knew, at the time he purchased the land, and before he had paid any part of the purchase money therefor, that said Thomas Hunter had not paid for said land, and that the vendor of said Thomas held notes against him for the purchase money.

The defendants jointly answered by a general denial of the complaint.

Washington Hunter filed a separate answer, alleging that he purchased the land of Thomas in good faith and for a valuable consideration; that he paid therefor forty acres of

land in Union county, valued at one thousand dollars, which he then conveyed to Thomas; that he paid, also, three hundred dollars in cash, and assumed to pay the mortgage to Shultz for three hundred dollars; that, before he purchased the land, he searched the records in the recorder's office of said county, and was informed by the recorder that there was no lien or mortgage against the land, except the mortgage to Shultz; that Thomas represented to him that the purchase money had been paid in full, &c., and that Thomas afterwards sold and conveyed the forty acres of land in Union county to a third party.

Reply in denial of the last paragraph. The answer contained another paragraph, which it is not necessary to notice in this opinion.

At the request of the plaintiff, the court, to which the cause was submitted by agreement of the parties, made a special finding of the facts, and the conclusions of law upon them, as follows:—

"1. The court finds that the defendant, Thomas Hunter, made the mortgage and two notes to the plaintiff, as set forth in the complaint.

"2. That the defendant, Thomas Hunter, made the mortgage and note to John B. Shultz, as stated in the complaint.

"3. That Shultz assigned the last named mortgage and note to John S. Wilson, the plaintiff, as stated in the complaint.

"4. That Washington Hunter bought the land so mortgaged, of Thomas Hunter, in April, 1864.

"5. That at the time Washington Hunter so bought the land, the mortgage given to plaintiff by Thomas Hunter had not been recorded.

"6. That at the time Washington Hunter so bought the land, he had notice that there was unpaid purchase money due from Thomas Hunter to plaintiff on the land, to the amount of seven hundred dollars, and that there was a note outstanding for the amount.

"7. That at the time Washington Hunter so bought the

land, he had no notice of the mortgage so given to Wilson, the plaintiff, but had notice of the mortgage so given to Shultz.

"8. That before full payment by Washington Hunter to Thomas Hunter of the purchase money for said land, to wit, while yet there remained due from said Washinton to Thomas the sum of three hundred dollars, Washington Hunter had full notice of the mortgage given by Thomas Hunter to plaintiff, and that the same was unpaid.

"9. That after notice to Washington Hunter of the mortgage made by Thomas Hunter to plaintiff, and that the same remained unpaid, he (Washington) paid Thomas Hunter the remainder of the purchase money due from Washington to Thomas, to wit, three hundred dollars."

Upon which findings the court declared the law to be:—

"1. That the plaintiff, by taking the mortgage from Thomas Hunter, waived his implied vendor's lien, it having thus been merged in the mortgage.

"2. That Washington Hunter having purchased the land of Thomas Hunter without notice of the mortgage given to plaintiff, and having paid for the same, all except the three hundred dollars, without notice of said mortgage, took the land independent of said mortgage, except as to said unpaid three hundred dollars, although he had notice at the time of his purchase that there was a larger amount, to wit, seven hundred dollars, still due on the land, from Thomas Hunter to plaintiff.

"3. That Washington Hunter having purchased the land of Thomas Hunter, with notice of the mortgage so given to Shultz, and also having paid to Thomas, on the purchase money, three hundred dollars, after notice of the mortgage given by Thomas Hunter to Wilson, the land remained subject to the mortgage so given to Shultz, and to the three hundred dollars so paid with notice of the mortgage given to Wilson.

"4. That as to the amount of the said mortgage given to Shultz, and the said three hundred dollars, with interest,

&c., a decree of foreclosure should be rendered against said land."

The plaintiff excepted to the opinion of the court as to the conclusions of law arising upon the facts so found, and especially, to so much of the opinion of the court as holds that, though Washington Hunter, at the time he purchased the land, had notice that seven hundred dollars of the purchase money from Thomas to the plaintiff was unpaid, and was secured by a note; yet, as said note was secured by a mortgage, of which said Washington had no notice at the time he purchased, said sum of seven hundred was not a lien on said land, but only the sum of three hundred dollars, which remained unpaid on the purchase money from Washington to Thomas at the time Washington was notified of the mortgage of Thomas to the plaintiff.

Judgment against Thomas Hunter for the whole amount due on both mortgages, and that the amount due on the mortgage to Shultz, and three hundred dollars of the sum due on the notes and mortgage to the plaintiff, with interest thereon for twelve months, were liens on the land, and of foreclosure of said mortgage for said sums.

Three questions arise upon the conclusions of law stated by the court from the facts of the case as shown by the special findings, viz:

1. Washington Hunter having actual notice of the mortgage to Wilson before he had paid all the purchase money to Thomas Hunter, did the land thereby become chargeable, in his hands, with the whole amount due on Wilson's mortgage?

2. Did Wilson, by taking a mortgage on the land sold, to secure the purchase money, waive his equitable lien, as determined by the court?

3. Washington Hunter having notice at the time he purchased the land that there was unpaid purchase money to the amount of seven hundred dollars due from Thomas Hunter to Wilson on the land, although he had no actual notice, at that time, of the mortgage to Wilson, can he be

considered a purchaser in good faith without notice of the mortgage?

The conclusion to which we have arrived upon the last question renders it unnecessary that we should examine or decide the first and second.

It is said in a note to *Gallion* v. *M'Caslin*, 1 Blackf. 91, that "notice, before actual payment of all the money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding the money be paid, is equivalent to notice before the contract." The text of the case seems to favor the same idea. The statement is copied from Sugden on Vendors, 530 (2d Am. from 5th London Ed.), to which a number of cases are cited. But in New York, where the purchaser had in good faith received a conveyance and paid part of the purchase money before notice of a prior outstanding unregistered mortgage, it was held, that the estate, in the hands of the purchaser, was only liable to the extent of the unpaid purchase money at the time of notice. *Frost* v. *Beekman*, 1 Johns. Ch. 288; *Jewett* v. *Palmer*, 7 *id*. 65.

*Query.* Is there a distinction, in this respect, between a prior mortgage or other mere money incumbrance, and a prior legal or equitable title to the estate itself?

As to the second question, it was held by this court in *Harris* v. *Harlan*, 14 Ind. 439, that the vendor, by taking a mortgage on the land sold, to secure the unpaid purchase money, waived the implied equitable lien therefor; that, although they are both intended to effect the same purpose, yet they cannot both exist at the same time, and for the same purpose, because they are inconsistent; that, in such case, the equitable lien is destroyed or merged in the mortgage. A contrary doctrine is held in Ohio. *Boos* v. *Ewing*, 17 Ohio, 500. *Neil* v. *Kinney*, 11 Ohio St. 58.

But, as before indicated, the case at bar will be disposed of by the decision of the third question.

The failure of Wilson to have his mortgage recorded within the time limited by the statute, did not render the

mortgage void. It remained a valid lien on the land, as against Thomas Hunter and his heirs, and all subsequent purchasers with notice. It was a fraud upon Wilson for Thomas to sell and convey the land to Washington Hunter, without notifying him of the existence of the mortgage, and that it remained unpaid; and if Washington Hunter, by negligence or otherwise, participated in the fraud, then he cannot claim to be an innocent purchaser in good faith, and the land is still subject to Wilson's mortgage.

Mr. Sugden says, "What is sufficient to put a purchaser upon inquiry is good notice; that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it. Therefore, if a man knows that the legal estate is in a third person at the time he purchases, he is bound to take notice what the trust is. So, notice that the title-deeds are in another man's possession may, under strong circumstances, be held to be notice of any equitable claim which he may have on the estate, and as a security for which he held the deeds."

The doctrine on the subject is very fully discussed, and many of the cases in reference to it, both English and American, collected and reviewed, in *Williamson* v. *Brown*, 15 N. Y. 354, and the rule deduced therefrom stated to be, that, "where the information is sufficient to lead a party to a knowledge of a prior unrecorded conveyance, a neglect to make the necessary inquiry to acquire such knowledge, will not excuse him, but he will be chargeable with a knowledge of its existence: the rule being that a party in possession of certain information, will be chargeable with a knowledge of all facts which an inquiry, suggested by such information, prosecuted with due diligence, would have disclosed to him." The rule thus stated was repeated and approved in the subsequent case of *Fassett* v. *Smith*, 23 N. Y. 252 ; and, we think, is clearly sustained both by authority and reason. See, also, *Case* v. *Bumstead*, 24 Ind. 429; *Bolles* v. *Chauncey*, 8 Conn. 389; *Lee* v. *Woodworth*, 2 Green Ch. 36.

It is a familiar and well established doctrine, that a pur-

chaser of real estate in the possession of a third person, is bound to take notice of his claim or title.

And so in *Morland* v. *Lemasters*, 4 Blackf. 383, where the purchaser, at the time of the purchase, had notice that a third person was in possession of the premises, but was assured at the same time that he was only a tenant at will and had no title, it was held, that the fact of possession was sufficient to put the purchaser on inquiry, and it was his duty, under the circumstances, to make further inquiries, and to examine into the nature and extent of the occupant's interest. It was further said in that case, that the fact that a third person was a resident on the premises, was of itself, constructive notice of his claim, to all persons who might wish to purchase. But the principle is the same in both cases. The possession is sufficient to put the purchaser on inquiry, which he fails to pursue at his peril; and he is chargeable with notice of the facts which he might have ascertained by making the proper inquiry.

Here, Washington Hunter was notified at the time of his purchase, that the purchase money to Wilson had not all been paid; that at least seven hundred dollars of it, for which Wilson held the note of Thomas Hunter, remained unpaid. The facts thus disclosed to him created the legal presumption, which he knew, or was bound to know, that Wilson held a lien on the land for whatever amount of the purchase money remained unpaid. These facts were sufficient to put him on inquiry for the purpose of ascertaining the facts in relation to the amount and condition as to security, of the purchase money due to Wilson. Wilson was the proper person to apply to for that information; and it is evident that if the inquiry had been thus pursued, he would have ascertained that no part of the purchase money had been paid, and that Wilson held a mortgage on the land therefor. But he did not see fit to make the inquiry, and he must, therefore, be charged with notice of the facts which he must have discovered, had it been made. He is not, therefore, an innocent purchaser in good faith; and the

land must be held liable for the whole amount secured by Wilson's mortgage.

So much of the decree of the court as directs a foreclosure of the mortgage to Wilson, for three hundred dollars only, with interest on that sum for twelve months, is reversed, with costs, and the cause remanded, with instructions to the Circuit Court to render a decree of foreclosure for the whole amount due on that mortgage. The decree, in all other respects, is affirmed.

FRAZER, J.—Finding myself unable to agree with the majority of the court in this case, and deeming the question one of considerable importance, I state briefly my views upon it.

Whatever may have been held elsewhere, I suppose it may be regarded as settled in this State, that the taking of a mortgage to secure the purchase money of lands is a waiver of the implied lien upon the lands sold which equity would otherwise give. *Harris* v. *Harlan*, 14 Ind. 439.

Our laws for the security of mortgagees, and of purchasers also, have furnished, by the record of mortgages, a certain and convenient method for the protection of both. A mortgagee owes it to others, as well as himself, that he cause his mortgage to be recorded. Then, if a subsequent purchaser neglect to search the record and thereby learn the truth, it is his own folly, and the consequences should fall upon him, rather than upon the mortgagee who has fully performed what was incumbent upon him. If this search is not made, the purchaser takes the risk voluntarily, and cannot complain if it results in his loss. If the mortgagee chooses to keep his mortgage from the record, his negligence tends to mislead purchasers. Out of these considerations springs most rightfully an exception to the general rule, that such information as is reasonably sufficient to put one upon inquiry merely shall be deemed enough to charge him with notice of the truth as it would have been

revealed to him if that inquiry had been made with reasonable diligence. Where the law has provided no convenient depository of notice to which all the world has access, this general rule is founded in a wise policy, and its administration tends to promote justice. But where the legislature has provided for a registry in a public office, for the very purpose of enabling all to inspect it and learn the facts, that office is the place to inquire; and the purpose of the registry acts is disregarded, if information sufficient to excite inquiry shall be held to require a purchaser to enter upon a laborious search in other and possibly distant and inconvenient places for a fact which ought to be found in the recorder's office, and would have been found there if the mortgagee had done his duty. It would have a tendency to produce carelessness and inattention as to the registry of instruments which ought to be recorded, and thereby it would to some extent defeat the policy of our legislation upon that subject. And I understand it to be settled law, therefore, that such information as is merely sufficient to put upon inquiry, is not enough to charge a purchaser with notice of an unrecorded mortgage; that the information received must go beyond that, and be such as will, without search any further, be sufficient of itself to raise a strong inference that the mortgage does exist.

In the case before us, the facts which came to the purchaser's knowledge were barely enough to put upon inquiry, and were wholly insufficient to lead to the inference that any mortgage existed.

The following authorities fully sustain the propositions of law which I have stated. The number might be greatly extended. *Dey* v. *Dunham*, 2 Johns. Ch. 182; *M'Mechan* v. *Griffing*, 3 Pick. 149; *Jolland* v. *Stainbridge*, 3 Ves. 478; *Wyatt* v. *Barwell*, 19 *id.* 434; *Hine* v. *Dodd*, 2 Atk. 275; *Jackson* v. *Given*, 8 Johns. 137; 4 Kent Com. 171-2; 1 Story Eq., § 398. The doctrine of these cases and writers was approved by this court in *Foust* v. *Moorman*, 2 Ind. 17. The only case which has come to my knowledge

which is not in full concurrence with these authorities, is *Williamson* v. *Brown*, 15 N. Y. 354; and a careful examination of the cases cited in the opinion in that case as indicating a change in the ruling upon the subject in England and in New York, will show that those cases were wholly misapprehended. *Whitbread* v. *Boulnois*, 1 Y. & Col. Ex. 303, did not involve the question at all. *Grimstone* v. *Carter*, 3 Paige, 421, distinctly recognized the rule as disclosed in *Dey* v. *Dunham*. The other cases from Wendell contain some loose language, not necessarily indicating an intention to disregard what had been so long and universally held upon the subject.

*D. D. Pratt* and *D. P. Baldwin*, for appellant.

*D. D. Dykeman*, for appellees.