## BLAIR v. WHITTAKER.

[No. 4,655.    Filed November 24, 1903.]

QUIETING TITLE.—*Notice of Vendee's Agent as to Former Conveyances.— Sufficiency of Evidence.*—In a suit to quiet title, the evidence showed that the real estate in controversy was a part of a tract of land, a life estate in which had been devised by testator to his wife and the fee to his children; that the children executed to plaintiff a deed which after delivery was returned to the justice of the peace before whom it had been acknowledged, and by whom an important correction was made; that before the deed was returned and recorded, and more than forty-five days after its execution, the grantors gave a warranty deed for the same tract of land to one Stewart who executed and delivered to plaintiff a warranty deed therefor, which latter deed was lost and never recorded; that thereafter the testator's said children conveyed to defendant adjoining lands, and unintentionally the land in controversy was included. Conversations with defendant's agents at the time of the last conveyance, admitting knowledge of the former conveyances of the land by the same grantors, were introduced in evidence, but such conversations were denied by the agents. *Held,*

Blair *v.* Whittaker.

that the trial court was warranted in finding that defendant's agents had notice of the prior conveyances before the transfer to defendant, and that defendant took his conveyance charged with knowledge of plaintiff's right under the unrecorded deeds. *pp. 666-669.*

PRINCIPAL AND AGENT.—*Notice to Agent.*—Notice to an agent for the purchaser of real estate is notice to the purchaser. *p. 670.*

NOTICE.—*Putting Party on Inquiry.*—Whatever puts a party on inquiry amounts to notice. *p. 671.*

DEEDS.—*Recording.—Validity.*—The recording of a deed is not essential to its validity as between the parties. *p. 671.*

SAME.—*Disaffirmance by Infant Feme Covert.*—Under §3364 Burns 1901, a married woman can not disaffirm a conveyance made during minority, until she has restored to her grantee the full consideration received. *p. 672.*

VENDOR AND PURCHASER.—*Possession of Land.—Notice.*—Actual possession of lands under claim of title is sufficient notice of such claim to put others on inquiry as to the existence and nature of the claim. *p. 673.*

From Superior Court of Vanderburgh County; *J. H. Foster,* Judge.

Suit by Florence Whittaker against Samuel D. Blair to quiet title to real estate. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*A. P. Twineham* and *C. M. McRoberts,* for appellant.

*W. E. Stillwell, Henry Kister* and *T. W. Cullen,* for appellee.

WILEY, P. J.—Suit by appellee to quiet title. The cause originated in the Gibson Circuit Court, where a trial resulted in her favor. Appellant took a new trial, as of right, under the statute, and thereupon the venue was changed to the court below, where it was again tried with a like result. Appellant moved for a new trial on the ground that the finding was contrary to law, and was not supported by sufficient evidence, and for alleged error in admitting certain evidence.

Appellant grounds his right to a reversal solely on the insufficiency of the evidence.

Appellee claims title by virtue of deeds which were not recorded within the statutory period, but avers in her com-

plaint that appellant purchased the real estate with full knowledge of the unrecorded conveyances to her while she was in possession.

In view of the facts as disclosed by the evidence it is important to state the material averments of the complaint. It is alleged that on February 19, 1897, Henry Robinson, John Robinson, and Julia A. Jordon were the owners of the undivided two-thirds of the real estate in controversy, which on said day was conveyed to appellee; that said deed was executed before one Gilmore, a justice of the peace; that it was sent to the recorder's office to be recorded; that the recorder returned it to appellee to be corrected; that she immediately delivered it to said Gilmore for correction; that while in his possession he died, and that after his death said corrected deed was found, dated February 19, 1897, but not until after appellants had obtained a deed to the same land from a part of the said parties; that immediately after the purchase of said real estate, appellee took possession of it; that she has ever since remained in possession and occupied it, and that she has made valuable improvements thereon; that on the 26th day of June, 1897, Julia A. Jordòn, Mack Lucas, and Julia Lucas, formerly Julia Robinson, were the owners of the other undivided one-third interest in said real estate, and on said day conveyed the same to one William M. Stewart, who conveyed the same to appellee on or about the 1st of July, 1897; that said deed had been lost without any fault of appellee and can not be found; that she immediately took possession of said one-third interest in said real estate so conveyed, and has remained in possession ever since; that before said deed was corrected as aforesaid, and after appellee had purchased all of the land in controversy, appellant quietly and secretly obtained, with full knowledge of appellee's rights therein, a warranty deed from the said John and William Robinson, Mack Lucas, and Julia Lucas to said real estate, together

with other lands in the immediate vicinity thereof, subject to the life estate of said Julia A. Jordon, and had such deeds properly recorded. It is averred that said deeds to appellant are a cloud upon her title, etc. Both parties claim title by purchase from the heirs and devisees of one William J. Jordon, deceased.

The decision of the case rests upon the application of the law to the following facts: William J. Jordon died, testate, the owner of several tracts of real estate, including the forty acres in dispute. By his will he bequeathed to his wife, Julia A. Jordon, in fee, certain of his real estate, and gave her a life estate in all of his lands. The lands in which he gave a life estate to his wife at her death vested in fee in William H. Robinson, John Robinson, and Julia Robinson, who were children of the testator's sister. February 19, 1897, Julia A. Jordon, William H. and John Robinson conveyed by warranty deed to appellee the undivided two-thirds of the real estate in question. That deed was executed before one Gilmore, a justice of the peace, and was tendered to the recorder to be recorded within the statutory period, but he refused to record it because of some defect. It was thereupon returned to the justice of the peace before whom it had been acknowledged for correction; was, in fact, corrected, but never recorded until August 27, 1900. June 26, 1897, Julia A. Jordon, Mack Lucas, and Julia Lucas, nee Robinson, conveyed by warranty deed to William M. Stewart all their interest in and to the forty-acre tract in controversy. This deed was not recorded, and when it was executed Julia Lucas was a minor, while her husband was over the age of twenty-one years. About July 1, 1897, William M. Stewart conveyed the same land to appellee, which deed was lost, and hence not recorded. July 31, 1897, John Robinson conveyed to appellant all of his interest in the real estate, subject to the life estate of Julia A. Jordan. August 2, 1897, William H. Jordan made a like conveyance to ap-

pellant.    December 27, 1897, after Julia Lucas had arrived at full age, she conveyed—her husband joining her—to appellant all the interest Julia A. Lucas had in and to the real estate under the will of William J. Jordan, subject to the life estate of his widow.   These last three deeds were duly recorded.   When the deeds above specified were executed to Julia A. Lucas, she took possession of the real estate, made valuable improvements thereon, and has remained in possession ever since.   Appellant owned other real estate in the same vicinity, and he and his son, who was his agent in purchasing the interest that the Robinson boys and their sister had in the real estate under the will of Jordan, were frequently in the neighborhood, and, to our judgment, the evidence clearly shows that they knew appellee was in possession of the real estate here in dispute. On the day that Mrs. Lucas and her husband executed their deed to appellant, she re-acknowledged the deed which she had made to Stewart.

These facts all stand unchallenged, and the disputed question of fact is, did appellant have notice or knowledge of the several conveyances from the Robinsons and Mrs. Lucas to appellee before he received his deeds of conveyance from them?   A mixed question of law and fact also arises on appellant's assumption that the conveyance of Mrs. Lucas to him after she became of age was a disaffirmance of her former conveyance to Stewart.   We shall first consider the disputed question of fact as to appellant's knowledge.   The evidence does not bring notice to appellant himself, and if he had notice it was through his agents. Both of the Robinson boys were ignorant and illiterate. They could neither read nor write, and their signatures to all of the deeds are by mark.   Their sister, Mrs. Lucas, could barely write her name and read.   The evidence does not disclose any dishonesty on their part, for it is not pretended that they sold their interests in this land to appellee, and afterward tried to profit dishonestly by again selling

it to appellant. On the contrary, the evidence shows that in their conveyances to appellant they did not know this particular tract was included, and, in fact, did not intend to include it. In the negotiations leading up to and including the execution of deeds to appellant and the payment of the money, John Blair, a son of appellant, and one Edward Moore, were representing him as his agents. The evidence establishes beyond all question such agency. On the day that William H. Robinson executed his deed to appellant, Guy Whittaker, husband of appellee, had a conversation with John Blair, in which he told him of the trade by which he (meaning his wife) had bought the land; that the deed had not been recorded, and that John Blair said to him that he understood that trade, and understood that they had bought the land; that Whittaker said to him he was afraid there would be trouble about it, and he replied there would not be; that he put that tract in the deed for fear there should be a mistake; that he wanted to wait until he bought the next heir, Julia Lucas, and then he would deed back to Whittaker. John Robinson, who executed his deed to appellant on July 31, 1897, testified that he told John Blair before the deed was made that he had deeded the forty acres in controversy to appellee.

Julia Lucas testified that the real estate which she conveyed to Stewart was not to be included in what she deeded to appellant. The deed she made to appellant was not read over to her, and, in the light of her evidence, it is clear that she had not intended to include the tract in controversy. This fact may become important when we come to consider the question of her disaffirmance of the Stewart deed, as claimed by appellant.

John Blair admitted in his evidence that John Robinson told him that the forty acres he deeded to appellee was not to be included in appellant's deed, but says that he told him that after the deed was executed to his father, and after the money was paid.

Ed Moore testified in substance that he knew that John Robinson had deeded his interest in this particular forty-acre tract to appellee, and that, as he was selling his interest in the Jordan lands to appellant, the latter conveyance would not affect the former deed. The evidence also clearly shows that Moore knew that John Robinson had deeded to appellee his interest in the forty-acre tract adjoining her place.

Mack Lucas testified that, before he and his wife and the Robinsons made their deeds to appellant, he told John Blair that his wife had deeded her interest in the land to Stewart, and that John replied: "He didn't care much about it. All he cared for was the hill land." This evidence is not contradicted, except in a general way, and appellant's agents, his son and Moore, testified, in substance, that they had no knowledge of the several transfers to appellee until after the conveyances to appellant.

From this evidence the trial court was fully warranted in finding, as it must have found, that appellant's agents had notice of the several conveyances to appellee before they made the conveyances to appellant. The general rule is that notice to an agent is notice to the principal of any matter that is within the scope of the agency. *Marion Mfg. Co.* v. *Harding,* 155 Ind. 648; *Supreme Court, etc.,* v. *Sullivan,* 26 Ind. App. 60.

It has many times been declared that in the relation of the principal and the third party the rule is that notice to an agent is notice to the principal, if the agent comes to the knowledge of facts while he is acting for the principal. Huffcut, Agency (2d ed.), §§141, 142. In 1 Am. & Eng. Ency. Law (2d ed.), 1144, it is said: "It may be stated as a broad proposition of. law that notice to an agent is, in contemplation of law, notice to the principal." See, also, 1 Am. & Eng. Ency. Law, 419. This doctrine has been recognized in repeated decisions both in England and most of the states of the Union. The same rule prevails

in the federal courts. We shall not cite the many cases so holding, but reference is here made to them in the above cited volumes of the Am. & Eng. Ency. of Law.

In Illinois it was held that if an agent has notice at the time of his purchase for his principal of the equitable rights of another, and of the claim of the latter to have previously purchased the subject-matter of the sale, such fact would be notice to the principal. *Whitney* v. *Burr,* 115 Ill. 289.

In Missouri it was held that he who takes with notice of an equity takes subject to the equity. This is not necessarily positive information brought directly home, but a fact that would put an ordinarily prudent man on inquiry. Also that the party will be as much bound by notice given to his agent as if it was given to himself, personally. *Meier* v. *Blume,* 80 Mo. 179.

The rule is that whatever puts a party on inquiry amounts, in law, to notice. Private inquiry would lead to the knowledge of the requisite fact by the exercise of diligence of an ordinarily prudent man. *Indiana, etc., R. Co.* v. *McBroom,* 114 Ind. 198; *Wilson* v. *Hunter,* 30 Ind. 466; *Case* v. *Bumstead,* 24 Ind. 429; 16 Am. & Eng. Ency. Law, 792.

Under the rules stated, and the facts as disclosed by the record, it is evident that appellant took the conveyances from John and William Robinson and Mrs. Lucas, charged with the knowledge of appellee's right under her unrecorded deeds.

The recordation of a deed is not essential to its validity as between the parties, and they are bound by it in the absence of such recordation. If it is recorded, it is considered notice to all the world, and if it is not recorded it can not prevail against a subsequent innocent purchaser without notice. Tiedeman, Real Property, §816. In 3 Washburn, Real Property (5th ed.), 343, the rule is stated as follows: "The proposition may be regarded as applica-

ble to all the states, that actual notice has the same effect in determining the right of precedence between parties claiming under different deeds from the same grantor as the record thereof regularly made would itself have. * * * If the grantee in the second deed which is recorded knew of a prior unrecorded deed when he took it, the latter will take precedence of the former, though the real purchaser, and the one who paid the consideration, and had the deed made to such grantee, did not know of the prior deed." See, also, *Murphy* v. *Nathans,* 46 Pa. St. 508; *Givan* v. *Dow,* 7 Blackf. 210.

It is urged by appellant that Julia Lucas disaffirmed her deed to Stewart after she arrived at her majority by the execution of her deed to appellant. True, the rule is that one who executes a deed during her or his minority may, upon arrival at majority, under certain conditions, disaffirm said deed; and the execution of a deed to another after such majority is in law a disaffirmance. *Losey* v. *Bond,* 94 Ind. 67; *Riggs* v. *Fisk,* 64 Ind. 100.

In this case, however, under the evidence, the subsequent conveyances by Mrs. Lucas to appellant after her majority would not amount to a disaffirmance, for two reasons: (1) Because it is shown that she did not understand or intend that the land in controversy was to be included in the deed to appellant; and (2) she specifically affirmed the conveyance to Stewart after her majority by re-acknowledging the deed to him. Again it is provided by statute that in "all sales by an infant *feme covert* of lands belonging to her, and in which sales and conveyances her husband has joined, he being of full age, said infant shall not be permitted to disaffirm said sale, until she shall first restore to the person owning said real estate the consideration she received for said land." §3364 Burns 1901. No pretense is made that Mrs. Lucas restored, or offered to restore the consideration she received from Stewart. There was no disaffirmance in this case.

There is another reason why appellant was put upon inquiry, and hence is not in a position to take advantage of appellee's unrecorded deeds.   The latter was in possession under a claim of title.   It is the rule both in this country and in England that actual possession of lands under a claim of title is sufficient notice of such claim to put others on inquiry as to the existence and nature of the claim. *Dyer* v. *Eldridge,* 136 Ind. 654, 658; *Jeffersonville, etc., R. Co.* v. *Oyler,* 60 Ind. 383; *Tuttle* v. *Churchman,* 74 Ind. 311; *Jeffersonville, etc., R. Co.* v. *Oyler,* 82 Ind. 394; *Campbell* v. *Indianapolis, etc., R. Co.,* 110 Ind. 490; 4 Cent. L. J. 122; 16 Am. & Eng. Ency. Law, 800; *Vaughn* v. *Tracy,* 22 Mo. 415.

While the record may fail to show by positive and direct evidence that appellant or his agents knew appellee was in possession, a reasonable inference from all the facts and circumstances, leads conclusively to that result.   It is the general rule in the United States that possession of the grantee under a prior recorded deed is constructive notice of title under which he holds.   Tiedeman, Real Property, §816 *et seq.,* and authorities there collected and cited.

What we have said disposes of all questions discussed by counsel adversely to appellant, and the judgment is affirmed.