KNOX-HARRISON BANK AND TRUST COMPANY *v.* JOHNSON

[No. 13,117.   Filed December 21, 1928.   Rehearing denied May 10, 1929.]

*Kessinger & Hill* and *Emison & Hoover*, for appellant.
*Arnold J. Padgett*, for appellee.

NICHOLS, J.—Action in replevin by appellee against appellant, wherein appellee claims that he is the owner and entitled to the immediate possession of $12,000 par value of Knox Consolidated Coal Company bonds, which he alleges are unlawfully retained by appellant. Answer in general denial. A trial by the court resulted in a general finding and judgment for appellee. The error assigned is the action of the court in overruling appellant's motion for a new trial.

Appellant insists that the evidence not only fails to preponderate in favor of appellee but that it fails absolutely to support the finding of the court. The facts, as shown by the evidence without contradiction, are that in November, 1923, and ever since, appellee was a director and the president of the Francisco Mining Company;

that during the month of November, 1923, the company was in dire straits for money with which to pay the accrued interest on its outstanding bonds. A directors' meeting was held, at which appellee as president notified all of the directors of the extreme need for money, and that the amount needed was approximately $15,000. Appellee stated that he would furnish collateral up to $50,000 and loan it to the company on which to borrow money; and Tyler L. Andrews, another director of the company, who was also president of appellant company, offered to make an effort to procure the money. At this meeting, minutes were made, which minutes, among other things, recite: "William Johnson, President and general manager, reported to the Board as follows: . . . Fifth: 'Our financial condition is worse than ever and money must be raised to meet semi-annual interest on our First Mortgage Gold Bonds due November 15, 1923, and also meet some of our more pressing obligations incurred for Mine Number Two plant and equipment.'

"The President stated that he was not in position to secure additional funds, but would gladly furnish up to $50,000 of his personal securities to be used as collateral on any loans which could be obtained for the company. T. L. Andrews volunteered to endeavor to raise some money through the use of Mr. Johnson's collateral, and notes for this purpose, in blank amounts, were executed by the treasurer and personally indorsed by each of the directors present and Mr. Hampson."

At this meeting, three or four notes were made out in blank, signed by the Francisco Mining Company, by J. R. Henderson, its secretary, and on the back indorsed by all the directors present, including one Hampson, who was not a director. Andrews the next day procured from the office of appellee the bonds which were to be used as collateral, and which appellee had offered to loan the company. Among these bonds were the $12,000

of bonds in controversy. Andrews took these notes and attempted to get money at different banks, and finally procured from two different banks about $5,000, using two of the notes that were signed at the directors' meeting, and putting up part of the bonds as collateral security. He could procure no other money, and finally went to the Knox Bank and Trust Company and procured the money there, notifying the office of the Francisco Mining Company at Indianapolis to prepare and execute a note to the Knox Bank and Trust Company for $10,000. This was done, and the note immediately forwarded in a letter to appellee at Vincennes. This note was executed by the Francisco Mining Company, by J. R. Henderson, its secretary, and forwarded to appellee who was president of the company. This note, upon receipt of it at the office of appellee, was taken by his secretary to the Knox Bank and Trust Company and discounted, and the $12,000 of bonds in controversy were used as collateral security therefor. Immediately after this, or possibly at the same time the note was sent, a receipt was sent in a letter to appellee with the description of the bonds left blank, the letter enclosing the receipt stating that they did not have the description of the bonds put up on the note of $10,000, and requesting that Miss Klein, appellee's secretary, supply this information on the receipts and return a duplicate. This receipt shows that the particular bonds in controversy were received by the Francisco Mining Company from appellee for use as collateral on note of Francisco Mining Company, payable to the Knox Bank and Trust Company, and were to be returned to appellee when released as collateral.

The original note was renewed three or four times, each renewal being sent out by the secretary of the Francisco Mining Company from its office at Indianapolis, sent

to appellee at Vincennes, and taken and delivered to the Knox Bank and Trust Company by the private secretary of appellee.

Miss Klein, the private secretary of appellee, did work for him in his office at Vincennes, both for him as an officer and director of the Francisco Mining Company and also for him as an individual. Each of these notes passed through the hands of either appellee or his secretary, and each of the notes was by his agent delivered to appellant company. These $12,000 of bonds have been with the Knox Bank and Trust Company and appellant, its successor, from November, 1923, until the commencement of this action, and with the full knowledge of appellee, and with the full knowledge of appellee as security to the $10,000 obligation owing to the Knox Bank and Trust Company and appellant as its successor, and the transaction with the Knox Bank and Trust Company has been, from the time of the deposit of the original note, carried on by appellee's private secretary. Appellee claims that he did not personally know the kind of note that had been originally negotiated at the Knox Bank and Trust Company, and that he thought the original note was one of the notes which were prepared at the board of directors' meeting in November, 1923, which carried the indorsement of all the directors and of said Hampson, and he further claims that it was the agreement that his collateral should go upon notes which carried such an indorsement. The other directors claim that there was no provision in the offer of appellee to furnish $50,000 of bonds that required the indorsement of the directors on the back of the note, but the fact remains that the note that was negotiated went through the hands of appellee or his private secretary, and each of the renewals went through in the same way.

Conceding appellee's contention as to this arrangement, and further that, as Andrews, the president of the

Knox Bank and Trust Company, had notice of such agreement, and that notice to him was notice to this bank, still we do not see how this can help appellee under the circumstances as disclosed by the undisputed evidence. Failing to get the money needed from other banks, Andrews, subsequent to the date of the signing of such other notes, arranged with the Knox Bank and Trust Company to furnish $10,000 on the collateral furnished by appellee, and then wrote to the home office of the Francisco Mining Company at Indianapolis, requesting that a note for that amount be prepared, which was done, and the note was sent to appellee at Vincennes, he being president of the mining company, with instructions to have the numbers of the bonds filled in, and then to deliver the note to the Knox Bank and Trust Company. This was done by Miss Klein, who was his private secretary both individually and as president of the mining company, and as such opened his mail and transacted his business, both for himself and for the mining company, in his absence.

It is a well-settled rule that notice to an agent is notice to the principal of any matter that comes within the scope of the agency. *Blair* v. *Whittaker* (1903), 31 Ind. App. 664, 670, 69 N. E. 182; *Field* v. *Campbell* (1904), 164 Ind. 389, 72 N. E. 260, 108 Am. St. 301; *Marion Mfg. Co.* v. *Harding* (1900), 155 Ind. 648, 58 N. E. 194. From these authorities, it follows that notice of the transaction to Miss Klein was notice to appellee, and he cannot be heard to say that he did not know of the subsequent arrangement as to the execution of the $10,000 note without the signatures of himself and the other directors.

Looking at the transaction from another view-point, the note, at the request of Andrews, was prepared and executed by the secretary-treasurer of the mining company, and by him mailed to ap-

pellee, who was the president and a director of the mining company. Having accepted a position of trust and responsibility in the mining company, through which, we have a right to assume, the company was given standing within the scope of its activities, he cannot be heard to say to third parties dealing with the company that he had entrusted the duties of his office to others and was, therefore, unacquainted with its affairs. This would be to permit him to have the advantages of his position without assuming its responsibilities. Having accepted the position, it was his duty to the stockholders and to the creditors of the company to inform himself of its business activities, and whatever knowledge he had as an officer of the company must be imputed to him as an individual.

*McCarthy* v. *Kapreta* (1913), 24 N. D. 395, 413, 139 N. W. 992, 48 L. R. A. (N. S.) 65, Ann. Cas. 1915A 834. We quote from this case as follows:

"In this connection there is evidence that the plaintiff, while holding the office of president, and necessarily a director of this banking institution, had left its management entirely to others, and principally to the cashier. That plaintiff was a resident of Minneapolis, and gave little attention to the business transacted by the bank. This is offered presumably in explanation of why he did not have actual knowledge of the want of consideration in the transaction between the defendant and the bank, because of which this note was given, to prove himself a holder in due course in fact. This is the equivalent of urging his own negligence and dereliction of duty under the banking laws as an excuse to enable him to establish good faith or actual want of knowledge of the infirmity in the paper, when he would have known such facts and possessed actual knowledge thereof had he performed the duties devolving upon him as president of a banking institution. A court can hardly recognize such

a plea. Plaintiff cannot lend his name, and thereby the influence of his probity and wealth, to his resultant benefit as a stockholder and bank official, without incurring the duty of fulfilment of the obligations of the office, including those arising from the presumed notice imputed to him by law as a bank official of the bank's transactions in the ordinary course of its dealings. As the presiding officer of the board of directors, he should not be heard to say he did not know matters presumed to be within the actual knowledge of the board, as an excuse for failure to perform his official duties," etc.

The Knox Bank and Trust Company, of which appellant is successor, so far as the evidence shows, had no knowledge whatever that the collateral placed with it as security for the $10,000 note was not with the full consent of appellee, while appellee, by entrusting his business and that of the mining company, to his private secretary and to the secretary-treasurer of the mining company made it possible for the alleged misunderstanding, and even if it be the fact that these to whom he entrusted his business exceeded their authority, still, the bank and trust company innocently accepted the note with the collateral, and furnished appellee's mining company $10,000. The note was renewed four times in the course of two or three years, during which time the Knox Bank and Trust Company and appellant, as its successor, might have protected themselves had they known of appellee's defense. Under such circumstances, appellee, having so entrusted his business affairs to his private secretary, cannot be heard to say, as against appellant, that he was not fully informed as to her acts in the matter.

As we see this case, the equities are altogether with appellant.

Judgment reversed.