In re Carol Ann DUNN, Debtor,

Melvin DUNN, Plaintiff,

v.

Carol Ann DUNN, Defendant.

Bankruptcy No. Bk–79–02100.

Adv. No. 80–004.

United States Bankruptcy Court,
W. D. Oklahoma.

March 30, 1981.

Richard R. Bailey, Oklahoma City, Okl., for plaintiff, Melvin Dunn.

Kenneth P. Craig, Moore, Okl., for defendant debtor, Carol Ann Dunn.

## MEMORANDUM ORDER

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

The complainant Melvin Dunn, brings this action against the defendant debtor, Carol Ann Dunn, his former wife, to modify the automatic stay and to permit him to foreclose a second mortgage (lien) of $12,-500.00 sanctioned and granted him by the divorce court on September 24, 1979, which sum was due to be paid in cash by November 24, 1979. The amount was not paid as agreed and decreed and the defendant debtor filed her bankruptcy petition November 26, 1979.

### ISSUE

May an agreed to property division cash payment divorce proceeding secured by a second lien on real estate, agreed to and granted to secure such cash payment, be discharged in bankruptcy and the second mortgage as a judicial lien avoided under Code § 522(f)(1)?

### FACTS

1) The parties to this adversary proceeding formerly were husband and wife. They were divorced in Custer County September 24, 1979 with the confirmatory written journal entry of judgment and decree of divorce being filed in Custer County November 9, 1979. A certified copy of such journal entry was filed with the county clerk in Garvin County, State of Oklahoma on November 15, 1979, the county wherein the instant real property is located.

2) When the defendant debtor filed her petition under chapter 7 of the Bankruptcy Code on November 26, 1979 she scheduled ownership of the following real property

and requested homestead exemption thereon:

The surface and surface estate only in and to the Northeast 10.17 acres of Lot 1 (otherwise described as Northeast Quarter of the Northeast Quarter of the Northeast Quarter), Section 4, Township 2 North, Range 2 West of the I.B.M., Garvin County, Oklahoma.

3) By agreement of the divorcing parties this real estate [of a value of between $65,000.00 and $73,000.00] was awarded to Mrs. Dunn "subject to the present (first) mortgage indebtedness [in the amount of $17,597.59] on said property" which she was to assume and pay in full.

4) In addition to other property divisions the divorce court decree awarded Mrs. Dunn the $8,500.00 cash which she had in her possession when the parties separated, prior to divorce and awarded the plaintiff herein:

"F. $12,500.00 in cash, which plaintiff (Mrs. Dunn) shall pay to the defendant (Mr. Dunn) on or before November 24, 1979, which sum of $12,500.00 shall be secured by lien on the real estate hereinabove described and awarded to the plaintiff. . . ."

5) In the decree, effective September 24, 1979, paragraph (7) recites in part: "The parties *have made an agreement* whereby they have settled their mutual claims . . ." This is following by a detailed recitation concerning the property division including the *securing by lien* on said real estate in Mr. Dunn's behalf of the agreed upon cash payment of $12,500.00. (emphasis added)

6) It has been stipulated that separate and different counsel from those presently representing the parties in these proceedings, represented the parties in the divorce, and that "Mrs. Dunn's (former) attorney told her that she would only have to pay the money when she sold the house, even though the term of payment is certain in the decree."

## LAW

### Property Division

Under the former Act "obligations created by property settlements or division of property of the parties to a divorce action . . . are dischargeable in bankruptcy, (citing authorities)." *In re Cox*, 2 BCD 1278, 1279 (CA 10 1976); *In re McCage*, 2 BCD 1438 (WD Okl. 1976). Read *Nitz v. Nitz*, 3 BCD 1198 (CA 10 1977). The successor Code section leaves this principle unchanged except for expressly making such determination a matter of federal rather than local law. [11 U.S.C. § 523(a)(5). See *In re Bell*, 6 BCD 833, 5 B.R. 653 (Bkrtcy. WD Okl. 1980); *In re Pelikant*, 6 BCD 758, 5 B.R. 404 (Bkrtcy. ND Ill. 1980); *In re Warner*, 6 BCD 788, 5 B.R. 434 (Bkrtcy. D. Utah 1980).]

"The provisions of a property settlement agreement are covered by the law of contracts. When approved by the court, they may not be modified without the consent of the parties unless there was fraud or collusion. The rights and obligations it creates survive the parties and are not affected by changing conditions, such as the remarriage of the wife or inability of the husband to pay. They may be discharged by bankruptcy. The payments cannot be enforced by contempt proceedings." *Goggans v. Osborne*, 237 F.2d 186, 189, 16 Alaska 451 (CA 9 1956).

### Realty Lien Generally

Read *N.C.R. v. Stockyards Cash Market*, 100 Okl. 150, 228 P. 778 (1924) as to a lien being a property interest. Compare *Williamson v. Winningham*, 199 Okl. 393, 186 P.2d 644 (1947). Also see *Lawson v. Lawson*, 295 P. 769 (Okl.1956) as to securing a property division by lien. Consider 12 Okla. Stat. (1971) § 706 as to judicial lien perfection.

### Judicial Lien Avoidance

Code § 522(f)(1) provides in part:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the

debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

"(1) a judicial lien.

(2) A nonpossessory, nonpurchase-money security interest in [certain specifically defined personal use items] ..." [11 U.S.C. § 522(f)]

The avoidance grace Congressionally granted a debtor has been held constitutionally offensive to retroactively superimpose such avoiding power on any contract or agreement predating the Code's effective date of October 1, 1979. *In re Seiler*, 8 B.R. 542 (Bkrtcy. WD Okl. 1981). Also read 642 F.2d 1193 (CA 10 1981).

## CONCLUSION

On September 24, 1979, prior to the Code's effective date, the parties agreed to a $12,500.00 cash award to Mr. Dunn to be paid "on or before November 24, 1979" and by further agreement secured such by a lien on the instant realty, all of which was included in the court's judgment and decree, effective the date of divorce, September 24, 1979. The prohibition as to remarriage for six months runs from such date [see 12 Okla.Stat. (1971) § 1280] and the decree among other things provides that the awarded child support of $200.00 per month with "the initial child support payment to be made on or before October 1, 1979." Although the date November 24, 1979 appears to be a rather short time for Mrs. Dunn to come forward with such amount, doubtless the parties in so agreeing and the court in approving the agreement noted the $8,500.00 in cash Mrs. Dunn had in her possession.

The lien in question is not avoidable under Code § 522(f)(1) for two distinct reasons: First, if a judicial lien within the meaning of such section it arose prior to October 1, 1979, the effective date of such avoiding grace. Secondly, if identified as coming into being subsequent to October 1, 1979, it is not an *involuntary* "judicial lien" within the ambit of Code § 522(f)(1) but

consensual and voluntary although judicially sanctioned.

Accordingly, plaintiff Melvin Dunn's request to modify the automatic stay to permit him to enforce his $12,500.00 delinquent lien should be GRANTED.

SO ORDERED.