**In re Daniel Clark YATES, Debtor.**

**Bankruptcy No. 83 B 1433 J.**

United States District Court,
D. Colorado.

March 11, 1985.

J.D. Pearson, Denver, Colo., for debtor.

C.J. Lewis, Westminster, Colo., for respondents.

## MEMORANDUM OPINION
## AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on the Court's Order to Show Cause to Farmers Insurance Group, Bill White, and their attorney, C.J. Lewis, Respondents, directing the Respondents to show cause why they should not be held in contempt of this Court for violation of the injunction contained in the Discharge Order pursuant to 11 U.S.C. § 524.

The parties stipulated to the following facts. On February 25, 1983, the Respondents caused to be recorded in the Clerk and Recorder's Office in Adams County, Colorado, a transcript of judgment for a judgment previously obtained by Farmers Insurance Group ("Farmers") and Bill White ("White") against the Debtor. On April 7, 1983, the Debtor filed his voluntary Chapter 7 petition herein, and on August 9, 1983, the Court entered its Discharge of Debtor Order. On April 11, 1984, the Debtor received a deed from his ex-wife to real property located in Adams County and recorded the deed with the County Clerk and Recorder on June 22, 1984.

The evidence further showed that between February 24, 1983, and April 8, 1983, the Debtor owned no real property in Adams County.

Shortly after Debtor acquired the property in 1984, he applied for a loan with Beneficial Finance Company and offered Beneficial a second mortgage on the property as collateral. Beneficial requested, and apparently received, a title report from a title insurance company which indicated the judgment lien of $1,800.00 of Farmers and White and refused to close the loan until that lien was released.

The Debtor approached Ms. Lewis and showed her a deed to the property dated in 1978 wherein he had deeded the property to his ex-wife and his Discharge Order. He informed Ms. Lewis that Beneficial said there was a lien and would not grant the loan until the lien was released. Ms. Lewis told the Debtor that if the lien survived the bankruptcy action she would not release the lien, but that she would research the matter. She also said that if the lien did not survive the bankruptcy, or if there was no lien, she would release the lien.

Later, the Debtor contacted Ms. Lewis and offered to pay $1,100.00 if she would release the lien. She agreed and the money was paid and the lien released.

Colorado law provides in § 13–52–102, C.R.S. that a certified transcript of judgment may be recorded with a county clerk and recorder and such then constitutes a lien on all real property of the judgment debtor then owned by him or which he may acquire afterwards. The lien continues for six years from the entry of the judgment.

This is a case of first impression in Colorado and the first issue is whether, under these facts, the Respondents had a lien. Although there are some differences in the Colorado and North Carolina judgment lien statutes, this Court agrees with Judge Wolfe in the case *In re Matter of*

*Clownley*, 19 B.R. 349 at 352 (Bankr.M.D. N.C.1982), when he states

A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding". 11 U.S.C. § 101(27). A "lien" is more particularly defined as "a charge against or interest in property to secure payment of a debt or performance of an obligation". 11 U.S.C. § 101(28). Thus, by definition, before a "lien" can be created, a creditor must take a charge against or an interest in property. Before a "judicial lien" can be created, a judgment creditor must obtain a charge against or interest in property by judgment or other legal proceeding as provided by the applicable law. *In re Ashe,* 669 F.2d 105, 108 (3rd Cir.1982).

 Thus, in Colorado, as in North Carolina, recording a judgment transcript can only create a lien if there is a *res* to which the lien can attach. In this case, before any lien could attach, the debt created by the judgment against the Debtor was discharged. Therefore, when he subsequently acquired property there was no debt owing to Farmers and White which would form the basis for a lien.

The Debtor argues, in effect, that since there was no lien, the Respondents were under an affirmative duty to file a release so as to clear title to this after-acquired property. And, since they did not do so, they were in violation of § 524.

The Court disagrees on two grounds. First, the law, as both counsel admit, was unclear in Colorado as to whether there was a lien or not. Second, the Respondents committed no affirmative act in violation of § 524. They had lawfully recorded their transcript of judgment. They did not contact the Debtor in any fashion seeking to enforce the "lien" or any personal liability of the Debtor. When the Debtor offered to pay $1,100.00 for the release of record of the transcript of the $1,800.00 judgment, the Respondents gladly accepted the offer. This was a voluntary act of the Debtor who chose to resolve his problems with Beneficial and the title insurance company in this fashion, apparently because he was anxious to obtain his loan. He was advised by Ms. Lewis to contact his attorney and he chose not to.

Now that the issue of law has been decided in this State, it may well be that a creditor in the same position as these Respondents may be under an affirmative duty to *execute* documents necessary to clear title to real property, but that decision must be left for the future. It is, therefore,

ORDERED that the Order to Show Cause issued January 10, 1985, is dissolved and vacated and that this case may again be closed.