**In re Carol Dee DUNN, Debtor.**

**Bankruptcy No. 87–60765.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division
at Gary/Lafayette.

Sept. 8, 1988.

U.S.C. § 503(b)(1)(C)) that interest on post-petition tax debts could be accorded administrative expense priority.

Thomas Tuytschaever, Schererville, Ind., for debtor.

Robert Stochel, Crown Point, Ind., for plaintiff.

MEMORANDUM OPINION
AND ORDER [1]

KENT LINDQUIST, Chief Judge.

I

*Statement of Proceedings*

This Chapter 7 case comes before the Court pursuant to James Dunn's (hereinafter: "Creditor") Objection filed October 20, 1987 to Carol Dee Dunn's (hereinafter: "Debtor") *Motion to Avoid Lien* filed September 15, 1987. The Creditor's objection is based upon the grounds that the interest of the Creditor in the real estate is not a "judicial lien", and consequently is not avoidable pursuant to 11 U.S.C. § 522(f)(1). The Creditor asserts that a Property Settlement Agreement between the parties incorporated into their Dissolution Decree protected a pre-existing property interest that existed in the Creditor in the marital property, and therefore the Debtor's Motion to Avoid the Lien not be granted.

By pre-hearing Order entered November 10, 1987, the parties stipulated that there was no need for submission of evidence on the issue, as the dispute involves a question of law only. The parties having briefed the issue per the scheduling order in said order, this contested matter is now ripe for resolution.

On November 23, 1981, the Lake Superior Court entered a Dissolution Decree dissolving the marriage of the Creditor and the Debtor. The Court also ordered, and made a part of said decree, a certain "Separation Agreement for Custody, Child Support, and Property Division." (*See* Exhibit "B" to Creditor's Application to Abandon filed September 24, 1987, which per order of court on November 10, 1987, was consolidated with the Motion to Void Lien).

The Property Settlement Agreement, duly executed by the parties, in its relevant part stated as follows:

Paragraph 3. *Marital Residence.*

(a) *The marital residence* located at 1428 Chestnut Avenue, Hammond, Indiana, *shall be quit claimed by the husband to the wife and shall be held exclusively by the wife.* The wife shall be responsible for all mortgage, insurance, taxes, and utility payments on said residence, and agrees to hold the husband harmless therefrom.

(b) That in return for quit claiming the marital residence to the wife, the husband shall receive a Promissory Note in the amount of $12,000.00, payable without interest within five years, or at the time the house is sold, the wife remarries, or lives in a state of purported marriage. *Said note shall be secured by the house.* (Emphasis added).

The Dissolution Decree in its relevant part states as follows:

The Court further finds that the parties hereto have entered into an agreement concerning the custody of their children, child support, and disposition of their property, which is filed herein and is in the following words and figures, to wit: (H.I.)

\*     \*     \*     \*     \*     \*

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the *Court that the parties hereto have entered into an agreement concerning* of the custody of their children, child support and *the disposition of their property, which is now by the Court approved,* filed herein, *made a part hereof,* and *each of the parties is ordered to carry out the terms and provisions of said agreement.*

The costs herein are paid.

All of which is ordered, adjudged, and decreed this *23rd* day of *November,* 1981.

James Richards
Judge (Emphasis added).

---

[1]. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankr.R. 9014 and 7052.

## II

*Conclusions of Law and Discussion*

■ No objection was made by counsel to the jurisdiction of this Court as to this matter, the Court finds jurisdiction to be present and that this is a core proceeding pursuant to 28 U.S.C. § 157.

The issue presented by Creditor's objection is whether 11 U.S.C. § 522(f)(1) applies to a marriage dissolution decree, and, more specifically, whether § 522(f)(1) applies to a consensual property settlement agreement between the parties to the dissolution decree whereby the Debtor voluntarily grants to the ex-spouse a lien in the marital property, and that agreement has been judicially approved by the court as part of a dissolution decree.

A "judicial lien" is defined at 11 U.S.C. § 101(32) (formerly 11 U.S.C. § 101(27) and (30) as redesignated by the Bankruptcy Amendment Act of 1984 and the Bankruptcy Act of 1986), as follows: " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Cf.* "lien" which is defined as a "charge against, or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(33). A "statutory lien" means a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute, and whether or not such interest or lien is made fully effective by statute;" 11 U.S.C. § 101(47).

A "security interest" means a "lien created by an agreement". 11 U.S.C. § 101(45). *See also,* "Agreement" defined at § 101(44).

As noted in the House and Senate Reports as to the definition of "liens", *the concept of lien is divided into three kinds of liens; judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive, and are exhaustive, except for certain common law liens.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 25 (1978), (emphasis supplied), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5811, 6269. *Reprinted* in Norton Bankruptcy Law and Practice and Related Legislation, Legislative History, and Editorial Commentary, 1987–1988, Edition. P. 38.

Also, the Senate and House Reports as to the definition of a "statutory lien", state that the definition of a statutory lien excludes judicial liens whether or not they are provided for, or are dependent on a statute, and whether or not they are made fully effective by statute. The Reports further note that *a statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action.* (Emphasis added). Mechanics, materialmen's, warehousemen's and tax liens are given as examples of statutory liens. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 314 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5813, 6271. *Id.* at 48. (Emphasis added).

The House and Senate Reports as to the definition of "security agreement" states that it is a lien "created by an agreement", and that although the term is similar to that under the UCC, Article IX, it is broader and includes real estate mortgages, *"as are all other liens created by Agreement"*. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 314 (1977); S.Rep. No. 95–989, 2nd Sess. 26 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5812, 6271. *Id.* at 47. (Emphasis added).

The Court is referred to two different Indiana statutes by which it could be argued that this dissolution decree created a "Judicial lien". First there is I.C. 34–1–45–2 which provides as ·follows:

Sec. 2. All final judgments for the recovery of money or costs in the circuit court and other courts of record of general original jurisdiction sitting in the state of Indiana, whether state or federal, shall be a lien upon real estate and chattels real liable to execution in the county where, and only where, such judgment has been duly entered and in-

dexed in the judgment docket as provided by law, from and after the time the same shall have been so entered and indexed, and until the expiration of ten (10) years from the rendition thereof, and no longer, exclusive of the time during which the party may be restrained from proceeding thereon by any appeal or injunction or by the death of the defendant, or by agreement of the parties entered of record.

It has been held that in Indiana, the right of a judgment creditor to assert a judgment lien against the property of a judgment debtor is established by this section. *Rushville Production Assn. v. Mohr,* 42 B.R. 1000 (S.D.Ind.1984). That is, a judgment lien is purely a creature of statute. *Uhrich v. Uhrich,* 173 Ind.App. 133, 362 N.E.2d 1163 (Ind.App. 3rd Dist.); *trans. den.*

In addition to the foregoing general statute as to the effect of a money judgment, the Indiana dissolution law at I.C. 31–1–11.-5–15 provides as follows:

Sec. 15. Security for Payment. Upon entering an order pursuant to section 11 or 12 of this chapter, [I.C. 31–1–11.5–11] or [31–1–11.5–12] relating to disposition of property, maintenance, and child support, the court may provide for such security, bond or other guarantee that shall be satisfactory to the court to secure the obligation to make child support payments or to secure the division of property. *As amended by Acts 1979, P.L. 273, SEC. 14.*

It has been held that the more specific dissolution statute designed to precisely meet the needs of divorcing citizens controlled over more general judgment lien statutes, and thus, pursuant to the specific language of I.C. 31–1–11.5–15, where the dissolution court awarded certain property to one spouse and granted the other spouse alimony, but expressly denied that other spouse a lien in the property, the dissolution statute controlled over the more general judgment lien statute and no lien arose. *Bell v. Bingham,* 484 N.E.2d 624 (Ind.App. 2d Dist.1985).

It was also held in *Franklin Bank & Trust Co. v. Reed,* 508 N.E.2d 1256 (Ind.St. Ct.1987), that the Dissolution Court has the power to completely sever the interest of the parties in each other's share of the property including any lien interest arising under I.C. 34–1–45–2. The *Franklin* court also held that since I.C. 34–1–45–2 is general in its application, giving a judgment lien to one obtaining a judgment in any action, such lien is not automatically eliminated by the dissolution statute. Rather, the dissolution statute gives the court the authority to overcome, augment, or limit the judgment liens, but that silence of the court does not eliminate the automatic provisions of the judgment lien statute, and the court may exercise its inherent power and eliminate a judgment lien only by positive action.

It should be noted that in the case at bar, the issue does not involve whether or not the obligation is in the nature of support or property settlement, and whether the debt is nondischargeable pursuant to § 523(a)(5). *See, e.g., In re Harrel,* 754 F.2d 902, 906 (11th Cir.1985); *Strout v. Prussel,* 691 F.2d 859 (9th Cir.1982).

It should also be noted that the policy of the Bankruptcy Code favors the discharge of property settlement obligations resulting from divorce. *In re Pederson,* 78 B.R. 264, 267 (9th Cir.B.A.P.1987).

Not allowing the Debtor to void a judicial lien as defined by § 101(32) arising out of a dissolution decree would violate the legislative history and policy of § 522(f)(1). Section, 522(f)(1), is intended to enable the Debtor to avoid judicial liens on exempt property so as to allow for a fresh start. *In re Baxter,* 19 B.R. 674, 675–676 (9th Cir.B.A.P.1982).

The issue is whether a judicial lien was created in the case at bar by the state court decree approving the property Settlement Agreement. An Eighth Circuit opinion cited by the creditor in his brief would agree with Creditor that no judicial lien was created. The case of *Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984), involved facts and issues somewhat similar to those presented in the case at bar. The divorce decree was

entered prior to the filing of the debtor's bankruptcy case. The decree specifically awarded the debtor title to the marital home, subject to a lien in the former spouse for one-half of the equity therein, which the Court set at $7,000.00. However, no property settlement agreement was involved, and the transfer of title, and the creation of the lien was done solely by judicial decree. The Eighth Circuit relied upon Minnesota law in reaching its opinion. Minnesota law recognized a spouse's property interest in homestead property acquired with marital assets, or assets contributed by the spouse during the marriage. The *Boyd* court reasoned that the "lien" created by the family court was to protect the creditor, ex-spouse's interest in the homestead, and did not attach to an interest of the Debtor, but simply recognized and provided a remedy to enforce a "pre-existing property right" in the marital home, and thus was not a lien voidable under § 522(f)(1). The court reasoned that the creditor had a pre-existing interest in the homestead which emanated from state law, and arose prior to the divorce decree. *Id.* at 1114–1115. Applying such an analysis, the Eighth Circuit dealt a blow to the debtor in light of the clear language of § 522(f)(1), which mandates that "[t]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such a lien impairs an exemption ... if such lien is—(1) a judicial lien, ...". 11 U.S.C. § 522(f)(1). The Eighth Circuit concluded that a judicial lien did not attach to any interest of the debtor arising from the divorce decree. Consequently, the debtor could not avoid the lien. *Id.* at 1114–1115.

In this Court's opinion, the dissent in *Boyd* points out the defects in the conclusion reached by the majority. The dissent correctly notes that the federal definition of "judicial lien" controls, not state law, and that the lien was not a mortgage since it was created by the Court, and not by contract or conveyance, and thus was a "judicial lien. *Id.* at 1115–1116 dissent; *See also, In re Pederson,* 78 B.R. 264, 267 (9th Cir.B.A.P.1987); *Maus v. Maus,* 837

F.2d 935, 937 (10th Cir.1988). The *Maus* case more closely parallels the case at bar.

In *Maus v. Maus,* the debtor was divorced prior to her bankruptcy, and the decree incorporated a property settlement between the parties, whereby it was expressly agreed by the parties, and decreed by the court that the debtor was given title to the marital home, "free and clear of any liens". The decree further provided that her ex-spouse should be entitled to 40% of the net proceeds of the house upon the sale thereof. The debtor asserted that the decree did not constitute a lien, and in the alternative, at the most, it created a voidable judicial lien under § 522(f)(1). The Bankruptcy Court found that the decree was a consensual lien created by the property settlement, and not avoidable under § 522(f)(1). The District Court on appeal concluded that the claim was a judicial lien. On appeal the Tenth Circuit affirmed the District Court. The *Maus* court noted that Kansas law provided that any judgment shall be a lien on real estate of the debtor within the county in which the judgment is rendered. Kan.Stat.Ann. § 60–2202(a) (1983). The *Maus* court distinguished those cases where the decree itself embodies an agreement to create a lien on the property to enforce a property settlement, *citing, In re Wicks,* 26 B.R. 769 (Bankr.D. Minn.1982) *affirmed,* 31 B.R. 591 (D.Minn. 1983), and *In re Dunn,* 10 B.R. 385 (Bankr. W.D.Okla.1981), and the situation where the court grants a lien in the divorce decree to secure a property settlement, *citing, In re Scott,* 12 B.R. 613 (Bankr.W.D.Okla. 1981). The *Maus* court concluded that the decree imposed a judicial lien pursuant to Kan.Stat. § 60–2202(a), and thus was a judicial lien as defined by § 101(27) (Now 32), and that the lien was voidable. The *Maus* court expressly rejected the "convoluted theory" of the majority in *Boyd v. Robinson, supra,* that the pre-existing interest in the property by virtue of the marital relationship does not pass to the debtor's spouse under the divorce decree, as the decree gives one party title outright, and that is the interest to which the lien attaches, *citing* the dissent in *Boyd v. Robin-*

*son* with approval. *Maus v. Maus,* 837 F.2d at 939.

In *In re Pederson,* 78 B.R. 264, *supra,* in the pre-petition dissolution decree, the debtor as part of a settlement was awarded as his sole and separate property the marital residence, which had been his separate property prior to the marriage. In order to equalize the property division, the state *court* in its decree of dissolution awarded the debtor's ex-spouse a judgment against the debtor in the sum of $8,000.00, and expressly held that the judgment was to constitute a lien against the debtor's real property to secure future property settlement payments. The debtor then moved to void the lien pursuant to § 522(f)(1).

The *Pederson* court carefully analyzed *Boyd v. Robinson, supra,* but nevertheless held that the dissolution decree expressly imposed a lien on the debtor's real property, and since the federal definition of a judicial lien controls, the lien obtained by court decree fit precisely into the Code's definition of a "judicial lien" at § 101(32), and thus the lien was voidable under § 522(f)(1), as the dissolution decree awarded the property outright to the debtor, and in its place the Court granted the ex-spouse an $8,000.00 judgment. It is noted in *Pederson* that although there was apparently a consensual property settlement agreement entered into between the parties which was judicially approved by the state court, and in turn incorporated into the dissolution decree, the Debtor did not voluntarily agree to grant the ex-spouse a lien. This was done by the Court.

This Court concludes that the analysis of the issue by the *Maus* court, the *Pederson* court, and the dissent in *Boyd* is correct, and that the majority in *Boyd* was incorrect in holding that the state definition of judicial lien controls. *Boyd v. Robinson,* 741 F.2d 1112, 1115 *dissenting opinion; Maus v. Maus,* 837 F.2d 935, 937; *In re Pederson,* 78 B.R. 264, 267.

In the case at bar, the Superior Court's decree which expressly approved the Property Settlement, and which incorporated the Property Settlement therein, clearly created a "lien" of some type on the Debt-

or's residence. Is the lien statutory, judicial, or a security interest (consensual)? The Property Settlement expressly states that the $12,000.00 note from the Debtor to the Creditor "shall be secured by the house." The lien is clearly not a "statutory lien". Although the state court may have rendered the dissolution decree and created the lien pursuant to statutory authority, this does not mean that the lien created by the judicial decree is a statutory lien. *See* discussion of legislative history at page 867, *supra.* The lien did not arise automatically, but was based both on an agreement to give a lien by the Debtor in the Property Settlement and on judicial action inasmuch as the court approved the property settlement. The $12,000.00 debt as evidenced by a note was judicially approved by a court-rendered judgment as was the agreement to secure the note by the house. Thus, the lien is either a "judicial lien" as defined by § 101(32), or a "security interest" (consensual lien) as defined in § 101(45). If it is a "security interest" it is, of course, not voidable under § 522(f)(1). The terms "security interest" and "judicial lien" are mutually exclusive concepts. *See* discussion of legislative history at page 867, *supra.* In the case at bar, the Debtor voluntarily granted the creditor a lien by the property settlement, and yet the property settlement was judicially approved and expressly incorporated into the decree.

The facts of each case must be carefully scrutinized to determine if the lien that is created is statutory, judicial, or as the result of a consensual security interest. In particular, this Court must carefully determine if the Court involuntarily made the property division and involuntarily granted or created a lien after the matter was litigated on the merits as opposed to where the Court approved a property settlement voluntarily entered into by both parties. In addition, it must be determined if the property Settlement Agreement voluntarily granted a lien or the Court independently and involuntarily imposed a lien on the Debtor's property to secure the property settlement. As the *Maus* court carefully noted, it distinguished such cases as *In re Wicks,* 26 B.R. 769, *affirmed* 31 B.R. 591,

and *In re Dunn,* 10 B.R. 385 *supra,* where the dissolution decree itself embodies an agreement to create a lien on the property to enforce the settlement agreement, and in *In re Scott,* 12 B.R. 613 *supra,* where the divorce court granted the ex-spouse a lien to secure a property settlement, whereas in *Maus* the property was granted to the debtor free and clear of liens, and the property settlement did not expressly grant the ex-spouse a lien.

In *Wicks,* the State Court adopted the agreement of the parties in its decree of dissolution. The agreement provided the fee simple to the marital home and was to be transferred to the debtor, subject to an existing mortgage, and a new lien in favor of the ex-spouse. The lien was intended to secure the ex-spouse's one-half interest in the equity in the property. The debtor moved to avoid the lien pursuant to § 522(f)(1). The ex-spouse claimed the agreement created the lien. The court agreed, and held the lien was a security interest. The court stated as follows:

> The plaintiff argues that the agreement creates the lien. 11 U.S.C. Section 101(36) provides that a security agreement is an agreement that creates or provides for a security interest. The relevant legislative comment states that though the terms security agreement and security interest are:
>> "similar to the same terms in the Uniform Commercial Code, article IX, they are broader. For example, the U.C.C. does not cover real property mortgages. Under this definition, such a mortgage is included, as are all other liens created by agreement, even though not covered by the U.C.C."
>
> The terms are clearly not intended to be given the ordinary commercial meaning. Congress intended that all liens created by agreement be considered security interests.
>
> The lien of the plaintiff was given force and effect by the order of the court but analysis of the facts does not end there. The agreement was entirely the product of the consent of both parties. It was this agreement which authorized and caused the judgment and decree to be entered by the district court.
>
> Congress, in the Bankruptcy Code, altered many concepts. The term security interest should be construed liberally to include all liens created by agreement regardless of the method or means employed to make them enforceable either between the parties or against the world. The parties wished amicably to end their relationship. To that end, they sought to divide the property they had together acquired. By law, they could only finally accomplish these goals through the means of a marriage dissolution action and a resultant judgment and decree.
>
> &ast;    &ast;    &ast;    &ast;    &ast;    &ast;
>
> Since the defendant did not have any source of money or property to finance the purchase but the homestead and in order to preserve the homestead for his family, the plaintiff financed the transfer at very agreeable terms. This is the nature of the plaintiff's lien. The fact that the means used to effect this agreement was the judgment of the court does not change the result.
>
> The court is further convinced that equity assists the result. The plaintiff and the defendant made an agreement which resulted in an alteration in their relationship and property rights. The defendant now seeks to have the advantage of the agreement but to avoid its onerous results. A compelling and explicit statutory requirement to the contrary would be required to negative the parties agreement and permit such an unfair result.
>
> The Bankruptcy Code was not intended to allow the debtor to avoid voluntary transfers. The debtor is given broad avoiding powers in addition to 11 U.S.C. Section 522(f). Section 522(g) and (h) allow the debtor to avoid transfers using the powers of a trustee. One of the conditions to use of such powers is that the transfer be involuntary. Similarly a judicial lien is generally considered involuntary. This is not such a case as to justify avoidance. The lien arose as the result of a consensual voluntary transfer. The defendant may not be allowed

to reap the benefits of this agreement and avoid the price to which she agreed. *Wicks v. Wicks,* 26 B.R. at 771.

In *Dunn,* the debtor and her ex-spouse also entered into a property settlement agreement, whereby it was agreed between the parties that $12,500.00 which was due and owing by the debtor, would be secured by a lien on the marital home. The decree recited and approved the agreement. The court held that the lien was not avoidable under § 522(f)(1) in that the lien was not an *involuntary* judicial lien, but was consensual and voluntary though judicially sanctioned. *In re Dunn,* 10 B.R. at 387. *See also, In re Hart,* 50 B.R. 956 (Bankr.D. Nev.1985).

The Court concludes that the results reached by the court in *Wicks* and *Dunn* are correct, and consonant with a proper analysis of what constitutes a judicial lien as set out in *Maus v. Maus. Contra, In re Thomas,* 32 B.R. 11 (Bankr.D.Or.1985); *In re Seablom,* 45 B.R. 445 (Bankr.D.N.D. 1984).

It should be noted that the Indiana dissolution law expressly sanctions and encourages settlement agreements between spouses. It is provided at I.C. 31–1–11.5–10 as follows:

Sec. 10 Agreements. (a) *To promote the amicable settlements of disputes* that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, *the parties may agree in writing to provisions* for the maintenance of either of them, *the disposition of any property owned by either or both of them* and the custody and support of their children.

(b) In an action for dissolution of the marriage *the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them,* or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent. (Emphasis supplied).

It was held in *Flora v. Flora,* 166 Ind. App. 620, 337 N.E.2d 846, 851 (Ind.App. 1st Dist.1975), that the Indiana Dissolution Act expressly encourages settlement agreements without differentiating between agreements that are ante-nuptial and those that are postnuptial.

It also has been held that if the parties to a dissolution decree desire a continuing financial relationship, they may take advantage of the statutory provision for settlement agreements which can be more or less precisely drafted in order to establish and protect their interests. *In re Marriage of Owens,* 425 N.E.2d 222 (Ind.App. 1st Dist.1981).

In Indiana, the Dissolution of Marriage Act vests in the trial court exclusive jurisdiction over all aspects of the marital relationship, including questions of property rights, and while the dissolution law encourages a negotiated settlement, a property settlement agreement in itself, is not a legal instrument binding on the parties to a dissolution of marriage, no matter how formally executed, until it is approved by the court, and incorporated and merged into the decree and, hence, a settlement agreement that has not been incorporated and merged into the decree has no legal efficacy as the Dissolution Act provides the sole method of dividing the marital property in a dissolution proceeding by court order or decree. *Anderson v. Anderson,* 399 N.E.2d 391, 398 (Ind. 2nd. Dist.App.1979); *McClure v. McClure,* 459 N.E.2d 398 (Ind. App. 2nd. Dist.1984) (Two-step process is required: an agreement by the parties and approval by the court); *Eddings v. Eddings,* 437 N.E.2d 493 (Ind.App. 1st. Dist. 1982).

■ In the case at bar, the Debtor *voluntarily* granted the Creditor a lien in the Debtor's property pursuant to the Settlement Agreement, and although the Agreement did not create a lien until the Court approved the same and the Agreement was

incorporated into and merged into the dissolution decree pursuant to I.C. 31–1–11.5–10, the Court concludes that the lien is more accurately characterized as being in the nature of a security interest rather than a judicial lien, and, thus not avoidable under § 522(f)(1). If there had been no property settlement between the parties, and the parties had litigated the issue of division of marital property on the merits, and the Court had involuntarily placed a lien on the Debtor's property pursuant to I.C. 31–1–11.5–15, a judicial lien would have resulted.

The voluntary written Agreement by the Debtor that the note, "shall be secured by the house" was legally tantamount to the granting of a real estate mortgage which is included in the definition of a "security interest" pursuant to § 101(45). *See* legislative history at page 867, *supra*, which states that a "security interest" includes all other liens created by agreement.

█ It has always been the law that even if a mortgage is improperly recorded, or has not been recorded, it is valid between the parties. *Perdue v. Aldridge*, 19 Ind. 290 (1862); *Kirkpatrick v. Caldwells Admir's*, 32 Ind. 299 (1869); *Blair v. Whitaker*, 31 Ind.App. 664, 69 N.E. 182 (1903).

█ It should be noted that even though a mortgage that has not been recorded or has been improperly recorded is valid between the parties, it must still meet certain minimum requirements to be enforceable between the parties. Indiana Code 32–1–2–15 suggests a minimum form of mortgage. However, no particular form of words is necessary to constitute a mortgage of real property and, if an instrument shows a present purpose on the part of a mortgagor to create an encumbrance or lien on specified real property as security for the payment of a debt or the performance of an obligation it is sufficient to constitute a mortgage. *Brown v. Brown*, 103 Ind. 23, 2 N.E. 233 (1885); *Snyder v. Bunnell*, 64 Ind. 403, 405 (1878).

█ In order for a mortgage to be effective a mortgage must contain a description of the land intended to be covered.

*Coquillard v. Suydam*, 8 Black F. 24 (1846). The description of the real estate must be sufficient to identify it. *Gorfrey v. White*, 32 Ind.App. 265, 69 N.E. 688, 691 (1904); *Halstead v. Lake County*, 56 Ind. 363 (1882), or it must furnish the means by which it can be identified. *Merchants and Laborers' Building Ass'n v. Scanlan*, 144 Ind. 11, 42 N.E. 1008 (1895); *Swatts v. Bowen*, 141 Ind. 322, 40 N.E. 1057 (1895). For instance, such descriptions as "all the lands owned by" the mortgagor, *Leslie v. Merrick*, 99 Ind. 180 (1884), and "being the tract deed to John H. Brown by E. Kitch, Trustee", *Willson v. Brown*, 82 Ind. 471 (1882) were held to be sufficient.

█ In addition, a mortgage to be effective should describe or identify the debt or obligation to be secured with reasonable certainty. *Bowen v. Ratcliff*, 140 Ind. 393, 39 N.E. 860, 862 (1895).

The Agreement *voluntarily* executed by the Debtor fulfills all of the necessary requirements of a consensual real estate mortgage in Indiana, and the mere fact that the Court approved and sanctioned this voluntary Agreement to grant a lien by the Debtor did not convert the same into a judicial lien for the purposes of § 522(f)(1). The court recognizes that two elements are necessary in order for a property settlement to create a lien under the Indiana Dissolution Law. First, a settlement has to be voluntarily reached between the parties. Secondly, the Court must approve the same. The ultimate lien created under such a scenario certainly has the elements of both a security interest and a judicial lien. A settlement agreement that has not been judicially approved is not binding on the parties, *See Anderson v. Anderson, supra*. Nevertheless, the lien was the result of the Debtor's voluntary actions. The express policy of the state of Indiana is to encourage such settlements, and thus, the Court holds that the lien is not a judicial one as defined by § 101(32) for the purposes of § 522(f)(1), but a voluntary lien that was judicially sanctioned, and thus not voidable. The predominant characteristic of the lien is that it was created voluntarily and by agreement pursuant to

§ 101(45) rather than solely by judicial actions and involuntarily. This Court should not place form over substance, nor ignore the obvious equities of the situation. To allow the Debtor to negotiate a settlement agreement by which title to the marital home, as well as, all of the equity to the marital home is vested solely in her, and in consideration therefore the Debtor voluntarily agreed to have a lien placed thereon to balance the rights of the parties in the marital property, and then permit the Debtor to void said lien on the grounds that the judicial approval of that agreement is tantamount to an involuntary judicial lien does violence to the spirit and purpose of § 522(f)(1). It is therefore,

ORDERED, ADJUDGED, AND DECREED, that the Debtor's Motion to Avoid the Lien of the Creditor pursuant to § 522(f)(1) should be and is hereby DENIED.