**In re Terry Joe INMAN, Debtor.**

**Bankruptcy No. 390–33458 RCM–7.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 19, 1991.

Order on Motion to Avoid
Lien May 15, 1991.

M. William Nelson, Dallas, Tex., for debtor.

Emily Stacy Donahue, Dallas, Tex., for DFM.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO AVOID LIEN

ROBERT C. McGUIRE, Chief Judge.

This matter comes before the Court on a motion to avoid lien pursuant to 11 U.S.C. § 522(f) filed on behalf of Terry Joe Inman, ("Debtor") in this Chapter 7 case. Dallas Flower Market, Inc. ("DFM"), the creditor whose liens are the subject of this motion, filed an objection to Debtor's motion. Testimony was taken and argument was heard on January 25, 1991, at which time the Court took the matter under advisement. Following are the Court's Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052.

## Facts

The relevant facts are not in dispute. This matter involves the disposition of a state court lawsuit, Cause No. 89–45608–M, styled *Dallas Flower Market, Inc. v. Inman.* On August 16, 1990, Debtor entered into a Settlement Agreement and Agreement to Pay Judgment (the "Settlement") with DFM, wherein Debtor agreed to have judgment entered against him, and granted and assigned to DFM "an interest in and a right to proceeds from the sale of" Debtor's homestead located at 2811 Oak Lawn Avenue, Dallas, Dallas County, Texas 75219 (the "Property").[1] Debtor then executed an assignment (the "Assignment") in favor of DFM as of September 1, 1989[2], which was filed in the Deed Records of Dallas County, Texas on November 6, 1989 in Volume 89216, page 1700.[3] On September 29, 1989, an Agreed Final Judgment (the "Judgment") was entered in the above referenced lawsuit.[4] The Judgment however was never abstracted by DFM.[5]

1. The pertinent parts of the Settlement Agreement read as follows:

   Whereas the parties agree, as evidenced by the Agreed Final Judgment ... that a judgment will be agreed to and entered in favor of Plaintiff [DFM] against Defendant Terry Inman ... in the amount of $62,000.00 plus interest ...
   Terry Inman further agrees to grant and assign to Plaintiff an interest in and a right to proceeds from the sale of the real property described as 2811 Oak Lawn ... Such interest in the Real Property will be equal and sufficient to satisfy and extinguish the amount due and owing under the Agreed Final Judgment.

2. The assignment was executed as of September 1, 1989, although the signature of Debtor was acknowledged and notarized on October 16, 1989 and the signature of DFM's representative was acknowledged and notarized on October 31, 1989. The judgment was signed by the State Court on September 29, 1989.

3. The Assignment in pertinent part reads:

   Whereas, in an effort to avoid litigation and buy peace Assignor and Assignee have agreed to settle their differences and disputes by executing a Settlement Agreement and Agreement to Pay Judgment entered against him in the principal amount of $62,000, ..
   NOW, THEREFORE, ...
   2. Assignor hereby assigns to Assignee an interest in the Real Property and proceeds from the eventual sale of the Real Property, with such interest being equal to the amount of money sufficient to satisfy and extinguish the amount of money that Assignor owes to Assignee according to the terms of the Settlement Agreement and Agreement to Pay Judgment.

4. The Judgment in pertinent part reads:

   ORDERED, ADJUDGED AND DECREED that the Plaintiff [DFM], do have and recover of and from the Defendant TERRY INMAN ... in the amount of [$62,000], plus interest at the rate of [10%] per annum until paid.
   IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant grant and assign to Plaintiff an interest in the real property described as 2811 Oak Lawn, Dallas, Texas being Lot 12/Block 1—1338 of the Hawkins Oak Lawn Addition to Dallas, Texas.

5. As part of the Settlement, DFM agreed to not abstract the judgment so long as Debtor was not in default of making payments in accord with a schedule set forth in the Settlement.

Debtor filed its voluntary petition under Chapter 7 on May 25, 1990. Debtor claimed exemptions under Texas law pursuant to 11 U.S.C. § 522(b)(2), and listed the Property as his exempt homestead. On October 10, 1990, Debtor filed its motion to avoid lien pursuant to 11 U.S.C. § 522(f). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2). See *In re Rosol*, 114 B.R. 560, 562 (Bankr.N.D.Ill.1989).

## Discussion

Debtor's motion requests this Court to avoid the Assignment Lien, an interest in his exempt homestead, and also the Judgment Lien pursuant to § 522(f)(1).[6] That section reads:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

This section sets forth three requirements a moving party must establish before a lien on exempt property will be avoided.

(1) The lien must be a judicial lien;

(2) The lien must be against an interest of the debtor in property;

(3) The debtor must be entitled to the exemption that the lien would impair.

*In re Underwood*, 103 B.R. 849, 850–851 (Bankr.E.D.Mich.1989); *In re Shands*, 57 B.R. 49, 50 (Bankr.D.S.C.1985).

There is no dispute as to the last two requirements. First, the Assignment is a collateral assignment; it was given to secure an amount sufficient to satisfy and extinguish the amount of money that Debtor continued to owe under the Settlement.

As such, the Debtor retained an interest in the property against which the Assignment was given. Second, the Assignment does impair an exemption to which Debtor is entitled. Debtor claimed the Texas exemptions and listed the Property on his schedules as his homestead under § 42.001 of the Texas Property Code pursuant to 11 U.S.C. § 522(b) and Bankruptcy Rule 4003. There was no dispute that the property is and was Debtor's homestead at all pertinent times herein.

■ Thus, initially and as to the Assignment, this matter poses a narrow legal issue for determination, *i.e.* whether the Assignment Lien, one made in accordance with the Settlement and Judgment, is a "judicial lien". If found to constitute a "judicial lien", as that term is defined by the Bankruptcy Code, it will be avoided as all the requirements of § 522(f)(1) will be met.

Debtor argues the Assignment was given in compliance with the Judgment, and thus it constitutes a judicial lien. Debtor relies on *In re Ashe*, 669 F.2d 105 (3rd Cir.1982), *cert. granted and vacated Commonwealth Nat. Bank v. Ashe*, 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 on remand 712 F.2d 864, *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 *reh'g denied*, 466 U.S. 963, 104 S.Ct. 2183, 80 L.Ed.2d 564 and *In re Underwood, supra*. The argument of DFM is the Assignment was made in accordance with the voluntary Settlement entered into by the parties, and as such was the product of an agreement and does not constitute a "judgment lien". For this proposition, DFM relies on *In re Brown*, 113 B.R. 318 (Bankr.W.D.Tex. 1990).[7] Thus, the origin of the Assignment is in dispute; whether it is the product of a

---

**6.** Although Debtor plead § 522(f), we limit our examination to § 522(f)(1) since § 522(f)(2) by its own terms is not applicable to this matter.

**7.** DFM's reliance on *In re Brown* is misplaced. The Court in *Brown* only determined the debtor had no standing to bring the action sought since the transaction did not qualify under any provision of § 522. The Court did not address the question of whether the lien was a judicial lien since it had no apparent genesis in a judicial proceeding. In this case, Debtor has plead § 522(f)(1) and there is a question as to its origin, thus a determination must be made whether the Assignment is a judicial lien which can or cannot be avoided pursuant to that section.

judgment or a consensual arrangement.[8]

The Bankruptcy Code divides the concept of lien into three types; judicial liens, security interests and statutory liens. See 11 U.S.C. § 101(32), (47), (49). These categories are mutually exclusive. *In re Underwood, supra,* at 851; *In re Dunn,* 109 B.R. 865 (Bankr.N.D.Ind.1988); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6269.

■ A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). A lien is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33). A "judicial lien" is thus a charge against or interest in property to secure payment of a debt obtained by judgment or other legal proceedings. *In re Ashe, supra,* at 108; *In re Yates,* 47 B.R. 460, 462 (Bankr.Col.1985).

In *Collier on Bankruptcy* ¶ 101.32, pp. 101–96 *et seq.* (15th ed.), it is stated:

A 'judicial lien' is one of three kinds of liens defined in section 101: statutory, judicial or consensual ('security agreement'). The introductory phrase 'means' indicates an intent for the definition to be limited in scope. A 'judicial lien' is a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. A lien obtained in a judicial proceeding, even though not by appealable judgment is still a 'judicial lien' as it may constitute a 'lien obtained by ... other legal or equitable process or proceeding.'

[Footnotes omitted].

Although the Code's definition of "judicial lien" is clear, what constitutes a judicial lien remains the subject of much dispute. A much cited interpretation of this definition is found in *In re Boyd,* 31 B.R. 591 (D.C.Minn.1983) *aff'd, Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984). In *Boyd,* Judge Lord wrote

[A] judicial lien is an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action.

*In re Boyd, supra,* at 594; *In re Lodek,* 61 B.R. 66 (Bankr.W.D.Tex.1986); *In re Davis,* 96 B.R. 1021 (Bankr.M.D.Fla.1989).

The Bankruptcy Code terms a lien created by agreement as a "security interest". 11 U.S.C. § 101(47). A "security agreement" is an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(44). These terms were intended to be broader than that afforded them in the context of the Uniform Commercial Code. Congress did not intend to give the terms their ordinary commercial meanings but that they encompass all liens created by agreement. To meet this objective these terms should be construed liberally. *In re Dunn, supra,* at 871.

As mentioned earlier, Debtor relies heavily on *In re Underwood, supra.* In *Underwood,* the Court stated:

To determine the nature of a particular lien, the court must consider the origin instead of the means of enforcement ... For example, if a lien was created by written agreement between the debtor and creditor, it is not converted into a judicial lien by virtue of the creditor's resort to judicial process.

*Id.* at 851. [Cites omitted].

In *Underwood, supra,* the creditor obtained a state court money judgment against the debtor, levied on certain real estate owned by the debtor and filed a notice with the register of deeds. The Court found the creditor's lien to constitute a judicial lien since the creditor's claim originated with the state court money judgment. *Id.*

In the case at bar, the Assignment did not originate from the Judgment but had

---

**8.** This is a critical distinction, since § 522(f)(1) does not affect a charge against or interest in property that is created by conveyance or contract rather than by a judgment or other legal proceeding. The former being a security interest. *Ashe* at 108.

its inception in the Settlement. It was this Settlement that caused the entry of the Judgment and the conclusion of the state court lawsuit. Debtor does not allege that the Settlement merged into the Judgment. It does appear that the Settlement had two lien prongs coming out of it; one was the lien in the Assignment, and one was the judgment lien. That portion of the settlement resulting in the judgment caused a merger as to the settlement and the judgment lien, but the judgment and assignment lien do not appear to have merged. *In re Lowell,* 20 B.R. 464 (Bankr.D.Mass. 1982); *In re Lodek, supra; In re Davis, supra.*

The Assignment is the product of a consensual arrangement entered by both parties and can more accurately be characterized as being in the nature of a security interest than a judicial lien.[9] The Assignment was executed on September 1, 1989, pursuant to the Settlement; a voluntary and contractually binding agreement between the parties. Once the parties entered into the Settlement and the Assignment was executed DFM obtained its interest in the Property to secure payment of the debt prior to the occurrence of any judicial action. The Assignment was not obtained by judgment or through any other legal proceeding and does not constitute a "judicial lien". Consequently, the Court finds that the Assignment is not a judicial lien and cannot be avoided pursuant to 11 U.S.C. § 522(f)(1).[10] Debtor's motion to avoid lien as to the Assignment is hereby denied.

The Court does find however that the Judgment does constitute a judicial lien to which § 522(f)(1) is applicable and hereby avoids the same.

9. This Court is of the opinion that the Assignment more closely resembles the granting of a mortgage than a judicially imposed lien. For a well reasoned analysis distinguishing the two see *In re Dunn, supra.*

10. By holding that the Assignment cannot be avoided by motion under § 522(f)(1), rather than possibly an adversary under Bankruptcy

### ORDER ON MOTION TO AVOID LIEN

CAME ON FOR HEARING on January 25, 1991 the Debtor's Motion to Avoid Lien (the "Motion"), and due and sufficient notice having been given thereof, and based upon the arguments and evidence presented by counsel, and the Memorandum Opinion on Debtor's Motion to Avoid Lien entered by this Court on February 17, 1991, it is hereby

ORDERED, ADJUDGED AND DECREED that the Motion is denied in part with respect to the Assignment executed by the Debtor in favor of Dallas Flower Market, recorded in Volume 89216, Page 1700 of the Deed Records of Dallas County, Texas, and it is further

ORDERED that the Motion is granted in part with respect to the judicial lien created by the Agreed Final Judgment entered on September 29, 1989 in Cause No. 89–45608–M in accordance with 11 U.S.C. § 522(f)(1).

Rule 7001(2) or otherwise, it is not the Court's intention to find that the Assignment Lien is valid; case law would appear contra. *See, for example, In re Niland,* 825 F.2d 801 (5th Cir. 1987). The validity of the Assignment Lien is not addressed further in this opinion, merely the impermissible attack by motion under § 522(f)(1).