**In re Harvey Allen APPLEBAUM and Mary Ruth Applebaum, Debtors.**

**BANK OF STOCKTON, Movant,**

v.

**Harvey Allen APPLEBAUM and Mary Ruth Applebaum, Debtors.**

**Bankruptcy No. 92–90466–7.
Motion No. M92–1392.**

United States Bankruptcy Court,
E.D. California.

Sept. 27, 1993.

Lance J. Krajewski, Stockton, CA, for debtors.

James E. Ganzer, Ganzer and Williams, Stockton, CA, for movant.

## AMENDED MEMORANDUM AND ORDER INVALIDATING JUDICIAL LIEN

ROBERT L. EISEN, Bankruptcy Judge.

This matter comes before the court on the motion of debtors Harvey and Mary Applebaum (the "Applebaums") to invalidate a judicial lien of the Bank of Stockton (the "Bank") under 11 U.S.C. § 522(f)(1). A hearing was held on February 17, 1993, in the United States Bankruptcy Court for the Eastern District of California, Modesto Division.

### Facts and Background

The Applebaums owed the Bank $4,468.37 on their bank card. They defaulted on the

debt, and the Bank sued in state court. Prior to trial, the parties agreed to settle. The settlement required the Applebaums to pay the Bank $5,664.40 in monthly installments of $150.00 and also required the Applebaums to execute a stipulation for judgment with execution postponed. This stipulation for judgment was signed by the state court judge. Paragraphs b. and c. of the stipulated judgment provided as follows:

b. Execution on the judgment may be levied immediately upon the filing of a declaration under penalty of perjury that a major breach of this settlement agreement has occurred.

c. An abstract of judgment may be recorded in any county of this State and a personal property judgment may be filed with the Secretary of State of the State of California.

The Applebaums missed their first payment, thereby breaching their agreement with the Bank. Pursuant to the terms of the settlement and stipulated judgment, the Bank obtained a judgment and filed an abstract of judgment in San Joaquin County creating a judgment lien against the Applebaums' home.

The Applebaums filed a petition for relief under Chapter 7, and they now seek to avoid the Bank's lien on their home. The Applebaums claim that $55,000 equity in their home is protected by California's $75,000 homestead exemption under Cal.Civ.Proc. Code § 704.730 and that since the Bank's lien is judicial as defined by 11 U.S.C. § 101(32) and impairs the amount of the homestead exemption, its fixing may be avoided as to the exempt property under 11 U.S.C. § 522(f)(1).

The Bank contends, however, that because the stipulation was signed voluntarily, the lien created by it is not judicial, but consensual. According to the Bank, its lien represents a "security interest" as defined by 11 U.S.C. § 101(36). Because 11 U.S.C. § 522(f) applies only to "judicial liens," the Bank argues that the fixing of its lien cannot be avoided.

## Discussion

■ The issue in this case is whether a lien arising from a settlement and stipulated judgment which consents to the filing of an abstract of judgment creates a lien that is a "judicial lien" within the meaning of 11 U.S.C. § 522(f)(1).

Section 522(f) reads as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien—

(1) a judicial lien ...

This section contains three requirements a moving party must establish before a lien on exempt property can be avoided: (1) the lien must be a judicial lien; (2) the lien must be against an interest of the debtor in property; (3) the debtor must be entitled to the exemption that the lien would impair. *In re Inman*, 131 B.R. 789, 791 (Bankr.N.D.Tex. 1991); *In re Underwood*, 103 B.R. 849, 850 (Bankr.E.D.Mich.1989); *In re Shands*, 57 B.R. 49, 50 (Bankr.D.S.C.1985). The parties agree that only the first of these three requirements is at issue.

■ As noted, the Bankruptcy Code defines both "security interests" and "judicial liens." A "security interest" is defined as a lien "created by agreement." 11 U.S.C. § 101(51). A "judicial lien," on the other hand, is a lien obtained by "a judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The legislative history clarifies that "judicial" liens and "security interests" are mutually exclusive categories. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 25 (1978) *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6269. Accordingly, although the Bank's signed stipulation may have characteristics of both a security interest and a judicial lien, it must be determined as either one or the other.

There are no reported cases in the Ninth Circuit that address the specific issue of whether consent judgments, such as the one in the case at hand, are "judicial liens" or "security interests." However, a majority of bankruptcy courts faced with the issue have determined them to be judicial liens. *See,*

*e.g., In re Ashe,* 669 F.2d 105 (1982), *cert. granted and vacated Commonwealth Nat. Bank v. Ashe,* 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982), *on remand,* 712 F.2d 864 (1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984), *reh'g denied,* 466 U.S. 963, 104 S.Ct. 2183, 80 L.Ed.2d 564 (1984); *In re Inman,* 131 B.R. 789 (Bankr.N.D.Tex.1991); *In re Holyst,* 19 B.R. 14 (Bankr.S.D.Ohio 1982).

The *Ashe* case is typical and illustrates the prevailing rationale behind including consent judgments within the definition of "judicial liens."[1] In *Ashe,* the debtors borrowed a sum from a bank in exchange for a promissory note containing a confession of judgment clause. The debtors breached their agreement with the bank and the bank obtained a judgment and a judgment lien against their residence. Debtors filed bankruptcy and moved under 11 U.S.C. § 522(f) to avoid the fixing of the lien because it was judicial and impaired an exemption authorized by 522(d) of the Bankruptcy Code. The bank opposed debtor's motion and argued that because the original promissory note was signed voluntarily, the lien created a security interest not subject to section 522(f). The court rejected the bank's argument. The court explained that "the *lien* [was] created not by the agreement, but by the judgment. Literally, both a filed cognovit note and a consent judgment fit within the definition of judicial lien' in 11 U.S.C. § 101(27)." *Ashe,* 669 F.2d at 108 (emphasis in original). The *Ashe* court further supported its opinion by looking to legislative intent. Under sections of the previous Bankruptcy Act, the definition of judicial lien had encompassed consent judgments. Because the definition had not been expressly changed by subsequent legislation, the *Ashe* court felt it was unlikely that Congress had meant to modify the definition of judicial lien to exclude consent judgments.

█ Consent judgments should be considered judicial liens for other reasons as well.

One of the primary purposes of bankruptcy law and, indeed, of 522(f) is to provide the debtor with a fresh start. *See Underwood,* 103 B.R. at 851. If the definition of judicial lien was expanded to include easily obtained consent judgments, much of the fresh start authorized by Congress through exemptions would be lost.

Further, if liens that arose from consent judgments were considered "security interests," negotiations to avoid or settle litigation would necessarily be skewed. For example, in negotiating the settlement of a debt, the creditor, fearing a possible bankruptcy filing, would be much more likely to settle, perhaps even on inequitable terms on the belief that a lien obtained from settlement would be deemed a "security interest" rather than an avoidable "judicial lien." Similarly, the debtor, contemplating bankruptcy, would avoid any sort of consent judgment and let all issues be handled at trial, ensuring a judgment that could be discharged and a judicial lien that could possibly be avoided.

█ The Bank in the case at hand argues that a security interest is created by *any* agreement and security interests should be construed liberally. The Bank contends that the difference between a judicial lien and a security interest is the simple fact that a judicial lien is involuntary and a security interest is voluntary. The Bank states that the parties negotiated a settlement agreement and the debtor should not be able to avoid a lien merely because a court has given the agreement its stamp of approval. However, the Bank misunderstands the nature of judicial and consensual liens.[2] The Bank's lien is not consensual, but judicial. The general terms of the Applebaums' stipulation did not indicate that the Applebaums agreed to any specific consensual lien on their house. The possible lien mentioned in the stipulation was the *same* lien that would have arisen had the case been brought to trial. Thus, it

---

[1]. Because of a retroactivity issue, not the issue at hand, the original *Ashe* decision was vacated by the Supreme Court in light of another case, *U.S. v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). However, on remand, the *Ashe* court reiterated its previous holding concerning judicial liens, and stated, "First, we are convinced that the analysis of that

question in our *Ashe* opinion is sound." *Ashe,* 712 F.2d 864, 868 (1983).

[2]. The Bank cites *In re Dunn,* 109 B.R. 865 (Bankr.N.D.Ind.1988) to support their arguments. However, the Bank's reliance on *Dunn* is misplaced. The security interest in *Dunn* is created by a divorce property settlement. As a result, the equities and policies supporting the

would appear from the stipulation that the Bank was merely preserving their right to an abstract of judgment.[3] Moreover, the Bank's lien is judicial because it derives its power from a subsequently executed judgment. At the time of the stipulation, it was not even clear that a lien would necessarily be filed as the stipulated judgment only provided that the Bank "may" file an abstract of judgment. The Bank's lien arose then not when the Applebaums signed the agreement, but later when the Bank executed on its judgment.

The Bank does not explain why the stipulation at hand is different from the typical consent judgment that the majority of the courts have determined result in judicial liens. Neither does the Bank attempt to explain any policies or reasons as to why consent judgments should be considered "security interests." As with most consent judgments, the Bank's lien derives from an abstract of judgment, not the party's consent. Section 522(f) accordingly applies and the filing of the lien may be avoided.

---

decision in *Dunn* are considerably different than in the case at hand.

**3.** Of course, had the parties *explicitly* stated in their stipulation that the lien was to be treated in *all* respects as a consensual lien, the court would construe it as such.

Parties to a settlement should have full freedom to stipulate specific rights and remedies. Absent such specific designations, however, the parties must accept judicial designations of those rights—as in this case.